UNITED STATES DISTRICT COURT
DISTRICT OF MASSACUSETTS

-------------------------------------------------------------X

SARAH DUNCAN, RICHARD SILVER,
ANTHONY WEISSENBURGER, JUDY          Civil Action No.: 1:16-cv-12120
WEISSENBURGER, KEVIN FRY, SHAUN
COONEY, CLINTON STEWART, and MICHELLE
LIM STEWART, individually, and on
behalf of others similarly situated,

               Plaintiffs,

        v.

NISSAN NORTH AMERICA, INC. and          **JURY TRIAL DEMANDED**
NISSAN MOTOR CO., LTD.,

               Defendants.

-------------------------------------------------------------X

## COMPLAINT

        Plaintiffs Sarah Duncan, Richard Silver, Anthony Weissenburger, Judy Weissenburger,

Kevin Fry, Shaun Cooney, Clinton Stewart,  and Michelle Lim Stewart ("Plaintiffs"), on behalf

of themselves and all others similarly situated, by the undersigned counsel, against Defendants,

Nissan North America Inc. ("NNA") and Nissan Motor Co., Ltd. ("Nissan Motor") (collectively

"Nissan" or "Defendants"), allege the following based upon counsel's investigation of various

publicly available sources including the National Highway and Traffic Safety Administration

Office of Defects Investigation ("NHTSA-ODI") website, certain subscription-based trade

resources and analysis of the relevant automobile components by experts.

## INTRODUCTION

        1.      This case concerns Nissan's putting profits before people, by deliberately

concealing a material safety defect plaguing hundreds of thousands of Nissan vehicles, including

Model Years ("MY") 2004-2006 Nissan Altima vehicles (with the VQ35 engine), MY 2004-

2009 Nissan Quest vehicles, MY 2004-2008 Nissan Maxima vehicles, MY 2005-2010 Nissan Frontier vehicles (with the VQ40 engine), MY 2005- 2010 Nissan Xterra vehicles, or MY 2005- 2010 Nissan Pathfinder vehicles (collectively, the "Class Vehicles").

2.      The defect involves the Class Vehicles' Timing Chain Tensioning System. The Timing Chain Tensioning System is central to ensure proper engine operation and performance. It is a system of parts of an internal combustion engine that functioning together synchronize the rotation of the crankshaft and the camshaft(s) so that the engine's valves open and close at the proper times during each cylinder's intake and exhaust strokes (collectively, the "Timing Chain Tensioning System"). Nissan knew the Timing Chain Tensioning Systems in the Class Vehicles were defective before selling the Class Vehicles, but Nissan concealed its knowledge of the defect from consumers, and, to avoid the cost, refused to timely implement design and materials changes that could have corrected the defect.

3.      This is a class action lawsuit brought by Plaintiffs individually and on behalf of all current and former Nissan Class Vehicle owners and lessees nationwide, who either reside in or were damaged by acts in Oregon, Colorado, Texas, Massachusetts, and North Carolina whose vehicles were manufactured with a defective Timing Chain Tensioning System ("Timing Chain Tensioning System defect" or "the defect").

4.      At the time of sale or lease, the Timing Chain Tensioning System that was installed in the Class Vehicles, was defective and caused the Class Vehicles' Timing Chain Tensioning System to fail at any time and to necessitate costly repair and/or replacement, and which in turn caused extensive damage to the Class Vehicles including, but not limited to damage, in certain cases, to the catalytic converters and the premature destruction of the engine. The Timing Chain Tensioning System is prone to premature failure before the end of the useful

life of the vehicles and well before consumers reasonably expect any failure to occur. Plaintiffs are informed and believe that a vehicle's Timing Chain Tensioning System is intended and reasonably expected to last for an extended period beyond the warranty without the need for repair or replacement.

5.      Nissan knew or should have known since at least 2004 that the Timing Chain Tensioning System installed in the Class Vehicles was prone to premature failure. Yet Nissan continued to install the defective Timing Chain Tensioning System in Class Vehicles knowing that it is prone to premature failure. In addition, Nissan not only refused to disclose the problem to consumers since 2004, but also actively concealed its knowledge of the defect despite consumer complaints and inquiries to it regarding problems with the Timing Chain Tensioning System.

6.      Recognizing that defect-related problems often manifest after the Basic Warranty of 36,000 miles or 36 months, whichever occurs first, or the Powertrain Warranty of 60,000 miles or 60 months, whichever occurs first, on the Class Vehicles expires, Nissan sold the vehicles to consumers without making necessary design or materials changes, knowing that the Timing Chain Tensioner System would likely fail after expiration of the periods set forth in the Basic and Powertrain Warranties..

7.      Not only did Nissan actively conceal the fact that the Timing Chain Tensioning System in the Class Vehicles were and are defective requiring costly repairs or replacement beyond the warranty period, but it also did not reveal that the existence of this defect would diminish the intrinsic and resale value of the vehicles, as well as potentially cause a safety concern for its passengers.

8.      In fact, Nissan undertook affirmative efforts to conceal the failures through, among other things, failing to notify class members while issuing secret Technical Service Bulletins ("TSBs") to its repair facilities describing the Timing Chain Tensioning System malfunctions, and by giving "goodwill" adjustments to reduce the costs of repairs for some customers who complained, but failing to do so for other customers who did not complain. Although Nissan was sufficiently aware of the problem as a result of preproduction testing, field reports, analysis of warranty data collected, design and materials failure mode analysis, and customer complaints made to dealers, all of this knowledge and information was kept exclusively in the possession of Nissan and its network of dealers and was unavailable to consumers.

9.      In addition, Nissan's TSBs failed to provide a permanent solution to remedy all of the Timing Chain Tensioning System defects and instead concealed the failures of the Timing Chain Tensioning Systems caused by using cheaper plastic parts, improper materials for the timing chain assembly's parts, improperly designed timing chains, and improperly designed tensioners and related parts.  Nissan failed to develop and install a permanent solution to the defect and, as a result, the warranty period on Class Vehicles would expire before owners would become aware of the defect. Through this practice, Nissan improperly and unlawfully transferred the burden and cost of replacement and repair from itself onto the owners of the Class Vehicles.

10.     Despite Nissan's knowledge of the fact that the Class Vehicles contained defective Timing Chain Tensioning Systems, Nissan continued to manufacture, sell and lease to consumers the defective Class Vehicles while failing to correct the defect, and while concealing the existence and nature of the defect.

11.     The Timing Chain Tensioning System for all of the Class Vehicles has a uniformly defective design and materials.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class (as defined below) are citizens of states different from Defendants and greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are citizens. This Court has jurisdiction over supplemental state law claims pursuant to 20 U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

13.     Venue properly lies in the District of Massachusetts pursuant to 28 U.S.C. § 1391(a) and (c) because Nissan has sufficient contacts with this District and sells its vehicles to consumers through numerous dealers in the District so as to subject it to personal jurisdiction in the District.  Moreover, a substantial part of the events and omissions to the Plaintiffs and subclasses herein, that give rise to the claims asserted in this Complaint occurred within this District.

## THE PARTIES

**A.     Plaintiff Sarah Duncan**

14.     Plaintiff Sarah Duncan is a citizen of the Commonwealth of Massachusetts. On or about May 15, 2010, Plaintiff Duncan purchased a 2007 Nissan Maxima automobile from Walpole Mitsubishi, in Walpole, Massachusetts, which was designed, manufactured, marketed, and originally sold by Defendant NNA through one of its affiliated Nissan brand dealerships.

15.     The vehicle was delivered to Plaintiff Duncan in Massachusetts.

16.     At all relevant times, Ms. Duncan's vehicle was serviced timely and properly.

17.     In 2016, when her vehicle had approximately 127,000 miles, Plaintiff Duncan brought her Maxima to Clay Nissan, a Nissan dealership located in Norwood, Massachusetts, and paid approximately $99.95 for a service diagnostic inspection in respect to a noise heard emerging from the vehicle's engine.  Technicians at Clay Nissan identified a problem with the vehicle's Timing Chain Tensioning System and Plaintiff Duncan was informed that the Timing Chain Tensioning System needed to be replaced. At no time did Nissan or the dealership inform Plaintiff that the MY 2007 Nissan Maxima had been experiencing problems with its Timing Chain Tensioning Systems.

18.     Plaintiff Duncan was informed at this visit that the repairs and replacements to her Maxima required by the defective Timing Chain Tensioning System would cost approximately $1,500.00, and that it would not be covered under any warranties, including her extended warranty and that Nissan would not reimburse Plaintiff Duncan for any of the repair and/or replacement expenses she incurred.

**B.     Plaintiff Richard Silver**

19.     Plaintiff Richard Silver is a citizen of the Commonwealth of Massachusetts. On or about May 1, 2007, Plaintiff Silver purchased a 2007 Nissan Maxima automobile from Bancroft Nissan (a Nissan dealership which was later sold to Bertera Nissan, Inc.) in Auburn, Massachusetts, which was designed, manufactured, marketed, and then sold by Defendants to Plaintiff Silver through one of its affiliated Nissan brand dealerships.

20.     The vehicle was delivered to Plaintiff Silver in Massachusetts.

21.     At all relevant times, Plaintiff Silver's Maxima was serviced timely and properly.

22.     On or about November 19, 2014, when his Maxima had approximately 74,024 miles, Plaintiff Silver brought the vehicle to Bertera Nissan, a Nissan dealership located in

Auburn, Massachusetts, and paid approximately $99.00 for a diagnosis regarding the whining noise emerging from the engine. Technicians at Bertera Nissan identified the whining noise as emerging from a problem with the vehicle's Timing Chain Tensioning System. Plaintiff Silver was informed that the Timing Chain Tensioning System needed to be replaced and/or repaired, and could be done at Bertera Nissan for approximately $2,200.00. At no time did Nissan or the dealership inform Plaintiff Silver that MY 2007 Nissan Maximas had been experiencing problems with their Timing Chain Tensioning Systems.

23.     Plaintiff Silver was informed by Nissan and/or officials, employees, agents at Bertera Nissan that the repairs to his Nissan Maxima required by the defective Timing Chain Tensioning System would not be covered under any warranties, and Nissan would not reimburse Plaintiff Silver for any Timing Chain Tensioning System repair and/or replacement expenses incurred. On or about December 4, 2014, Plaintiff Silver brought his Maxima to Pete's Service in Worcester, Massachusetts and paid approximately $1,641.45 out of pocket for repairs and replacements to his vehicle's Timing Chain Tensioning System.

**C.     Plaintiffs Anthony and Judy Weissenburger**

24.     Plaintiffs Anthony and Judy Weissenburger (collectively, the "Weissenburgers") are citizens of the State of Oregon. On or about May 29, 2004, Plaintiffs purchased a 2004 Nissan Maxima automobile in Oregon, which was designed, manufactured, marketed, and then sold by Defendants through Beaverton Nissan (now under the name of "Carr Nissan"), an affiliated Nissan brand dealership.

25.     The vehicle was delivered to the Weissenburgers in Oregon.

26.     At all relevant times, the Weissenburgers' vehicle was serviced timely and properly.

27.     On or about October 3, 2011, when their Maxima had approximately 39,666 miles, the Weissenburgers brought their vehicle to Beaverton Nissan (now known as Carr Nissan), a Nissan dealership located in Beaverton, Oregon for a diagnosis of whining noise which would increase in volume as the car accelerated.  Technicians at the dealership identified problems with the vehicle's Timing Chain Tensioning System, including worn out secondary timing chain tensioners. The dealership technicians informed Plaintiffs that components of the Timing Chain Tensioning System needed replacement. At no time did Nissan or the dealership inform the Weissenburgers that many 2004 Nissan Maximas had been experiencing problems with their Timing Chain Tensioning Systems.

28.     The Weissenburgers were later informed by Nissan officials that the repairs to their Maxima required by the defective Timing Chain Tensioning System would not be covered by Nissan under any warranties, including the extended Powertrain Coverage warranty, or any other reimbursement coverage. As a result, the Weissenburgers had to pay the entire cost for their Maxima's Timing Chain Tensioning System repairs, totaling approximately $1,400.00, which was completed by Beaverton Nissan in October 2011.

**D.      Plaintiff Kevin Fry**

29.     Plaintiff Kevin Fry is a citizen of the State of Colorado. On or about April 18, 2009, Plaintiff Fry purchased a 2009 Nissan Frontier automobile (with the VQ40 engine) in Colorado, which was designed, manufactured, marketed, and then sold by Defendants through one of its affiliated Nissan brand dealerships.

30.     The vehicle was delivered to Plaintiff Fry in Colorado.

31.     At all relevant times, Mr. Fry's vehicle was serviced timely and properly.

32.     On or about June 15, 2015, when his vehicle had approximately 58,100 miles, Plaintiff Fry brought the vehicle to Boulder Nissan, a Nissan dealership located in Boulder, Colorado, for a diagnosis regarding  a whining noise emerging from the vehicle's engine. Technicians at the dealership identified a problem with the vehicle's Timing Chain Tensioning System and informed Plaintiff Fry that the Timing Chain Tensioning System in his Frontier needed to be replaced, which could be taken care of at the dealership for an estimated cost of $1359.72. At no time did Nissan or the dealership inform Fry that many 2009 Nissan Frontiers had been experiencing problems with their Timing Chain Tensioning Systems.

33.     At the time of his visit, Plaintiff Fry was informed by the manager at Boulder Nissan that the repairs to his Frontier required by the defective Timing Chain Tensioning System would not be covered under any Nissan warranties, including the Powertrain Coverage warranty. On the advice of the dealership's manager, Fry then reached out to Nissan representatives, and even a Nissan manager, in the Nissan corporate claims resolution department to seek at least partial coverage or credit from Nissan for the needed repair on the basis that his vehicle was under 60,000 miles at the time of the repair, and therefore covered under warranty. Nissan officials denied his claim in its entirety, leaving Fry to incur full cost of the Timing Chain Tensioning System repairs and/or replacements.  On or about June 26, 2015, Fry brought his Frontier to Hayes Automotive, in Longmont, Colorado, where they completed the needed Timing Chain Tensioning System repairs and/or replacements for approximately $1,388.42 which Plaintiff Fry paid.

**E.      Plaintiff Shaun Cooney**

34.     Plaintiff Shaun Cooney is a citizen of the State of Colorado. On or about March 28, 2016, Plaintiff Cooney purchased a 2007 Nissan Xterra automobile from Matthew Rockwell,

a private 3rd party owner in Boulder, Colorado. The Xterra was originally designed, manufactured, marketed, and originally sold by Defendants through one of its affiliated Nissan brand dealerships. At the time of Plaintiff Cooney's purchase, the Xterra had approximately 77,000 miles, and on March 25, 2016, it underwent a Pre-Purchase Inspection by a technician at Boulder Nissan, a Nissan dealership in Boulder, Colorado.

35.     The Pre-Purchase Inspection was documented by a Service Advisor, Amee Bonin, in an invoice and Automobile Status Report. Following the Pre-Purchase Inspection, Nissan, through its Boulder Nissan Dealership, its employees, agents and/or servants, represented to Plaintiff Cooney that it thoroughly inspected the Xterra, and that, other than the brakes, rotors, and front shock, the vehicle was in good condition and fit for its intended purpose. In speaking with the Service Advisor, it was emphasized to Plaintiff Cooney that the Xterra was in great overall condition, and that the dealership would be interested in purchasing the vehicle themselves if he decided not to go through with his purchase of the vehicle. At no point before Plaintiff Cooney's purchase of the vehicle did the Service Advisor or any other Nissan agents or officials, at the Boulder Nissan or Nissan corporate offices or elsewhere, disclose anything regarding Timing Chain Tensioning System defects and problems which were known to be common to Nissan Class Vehicles, including MY 2007 Xterras, or the existence of a whining noise emerging from the Timing Chain Tensioning System of the inspected Xterra – a clear indication of the presence of the defect -- which was present in the vehicle at the time of Plaintiff Cooney's purchase only three days later. Plaintiff Cooney relied upon the representations made by Boulder Nissan in assessing whether to purchase the vehicle.

36.     The vehicle was purchased and acquired by Plaintiff Cooney in Colorado.

37.     At all relevant times, the Plaintiff Cooney's vehicle was serviced and maintained in a timely and proper manner.

38.     In May 2016, when his vehicle had approximately 78,000 miles and had been making odd whining noises, Plaintiff Cooney brought his Xterra to Fuoco Nissan, a Nissan dealership located in Grand Junction, Colorado.  After listening to the Xterra's whining noise, the technician at Fuoco Nissan identified the existence of a problem with the vehicle's Timing Chain Tensioning System. The dealership informed Plaintiff Cooney that components of the Timing Chain Tensioning System needed to be replaced. At that visit, a Nissan representative working at the dealership also confirmed to Plaintiff Cooney that defective Timing Chain Tensioning Systems were a common problem in Nissan vehicles, such as 2007 Xterras, and the dealership had been frequently performing repairs and/or replacements to Nissan Timing Chain Tensioning Systems as a result.

39.     Plaintiff Cooney was informed by Nissan officials, employees, and/or agents at this visit to Fuoco Nissan that the repairs and/or replacements to his Xterra required by the defective Timing Chain Tensioning System could be performed by the dealership at a cost between $1,200.00 and $1,500.00.   He was also informed that the needed repairs and/or replacements would not be covered under any Nissan warranties, and that Nissan would not reimburse Plaintiff Cooney for any Timing Chain Tensioning System repair and/or replacement expenses incurred.  As a result, Plaintiff Cooney paid out of pocket the entire cost for repairs and replacements to his Xterra's Timing Chain Tensioning System.  He had the repairs made at Jeff's Automotive in Grand Junction, Colorado at cost totaling approximately $928.01, on or about May 10, 2016.

**F.      Plaintiff Clinton Stewart**

40.     Plaintiff Clinton Stewart is a citizen of the State of Texas. In or about March 2006, Plaintiff Clinton Stewart purchased a 2006 Nissan Frontier automobile (with the VQ40 engine) in Texas, which was designed, manufactured, marketed, and then sold by Defendant NNA to Plaintiff Clinton Stewart through Baytown Nissan, in Baytown, Texas, one of its affiliated Nissan brand dealerships.

41.     The vehicle was delivered to Plaintiff Clinton Stewart in Texas.

42.     At all relevant times, Clinton Stewart's vehicle was serviced and maintained in a timely and proper manner.

43.     On April 11, 2016, when his vehicle had approximately 87,333 miles, Plaintiff Clinton Stewart brought his Frontier to Baytown Nissan for a service and inspection. Technicians at Baytown Nissan identified a problem with the vehicle's Timing Chain Tensioning System and the dealership informed Plaintiff Stewart that the vehicle's Timing Chain Tensioning System needed to be replaced. At no time did Nissan or the dealership inform Plaintiff Clinton Stewart that MY 2006 Nissan Frontiers had been experiencing problems with their Timing Chain Tensioning Systems.

44.     Plaintiff Clinton Stewart was informed by Baytown Nissan at this visit that the repairs to his Frontier required by the defective Timing Chain Tensioning System would cost approximately $1,600, and that it would not be covered under any warranties, including his extended warranty. As a result, Plaintiff Clinton Stewart would have to bear all costs for parts and labor in replacing his Frontier's Timing Chain Tensioning System. On or about April 12, 2016, Plaintiff Clinton Stewart had the repairs made at a cost of approximately $1625.77 which Plaintiff Clinton Stewart paid for.

**G.      Plaintiff Michelle Lim Stewart**

45.     Plaintiff Michelle Lim Stewart purchased a 2007 Nissan Pathfinder automobile in North Carolina, which was designed, manufactured, marketed, and then sold by Defendants to Plaintiff Lim Stewart through one of its affiliated Nissan brand dealerships Crown of Nissan in Greensboro, North Carolina.

46.     The vehicle was delivered to Plaintiff Lim Stewart in North Carolina.

47.     At all relevant times, Plaintiff Michelle Lim Stewart's vehicle was serviced timely and properly.

48.     In or around 2014, when Plaintiff Michelle Lim Stewart's Pathfinder had approximately 51,000 miles, the vehicle experienced problems with its Timing Chain Tensioning System as was apparent from the emerging whining noise.   At no time did Nissan inform Plaintiff Michelle Lim Stewart that 2007 Nissan Pathfinders have been experiencing problems with their Timing Chain Tensioner Systems.

49.      On or about May 12, 2015, Plaintiff's Pathfinder was examinedby Aamco Transmissions & Total Car Care in Blacksburg, Virginia.   Technicians there confirmed the defective Timing Chain Tensioning System contained in the Pathfinder, and recommended replacement of the Timing Chain Tensioning System. Plaintiff Lim Stewart paid Aamco Transmissions & Total Car Care approximately $ 1,910 out of pocket for replacement of her vehicle's Timing Chain Tensioning System.

**H.     The Defendants**

50.     Defendant Nissan North America Inc. ("NNA") is a domestic corporation, with its principal place of business and national headquarters located in Tennessee, and which designs, manufactures, distributes, sells and warrants automobiles under several prominent brand names, including the Nissan Pathfinder®, Nissan Xterra®, Nissan Frontier®, Nissan Quest®, Nissan

Altima® and Nissan Maxima® vehicles throughout the United States. In addition, the Pathfinder, Xterra, Quest, Altima, Maxima and Frontier vehicle models are advertised, distributed and sold at multiple places of business throughout the United States through NNA's dealers, among other places. Defendant NNA is the warrantor of the Class Vehicles and the various parts and components.

51.     Defendant Nissan Motor is a Japanese corporation engaged in the business of automobile design, manufacturing, distribution, marketing, servicing, repairs, sales, and leases of passenger vehicles, including the Class Vehicles NNA is a wholly owned subsidiary of Nissan Motor. Both Defendants are also referred to herein jointly and severally as "Nissan."

52.     Upon information and belief, Defendant NNA communicates with Defendant Nissan Motor concerning virtually all aspects of the Nissan products it distributes within the United States.

53.     Upon information and belief, the Timing Chain Tensioning System within the Class Vehicles was developed exclusively by Defendant(s) NNA and/or Nissan Motor.

54.     Upon information and belief, Defendants NNA and/or Nissan Motor developed the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for Class Vehicles.

55.     Defendants NNA and Nissan Motor engage in continuous and substantial business in Massachusetts.

## TOLLING OF STATUTES OF LIMITATION

56.     Any applicable statutes of limitations have been tolled by Nissan's knowing and active concealment, denial, and misleading actions, as alleged herein. Plaintiffs and members of the Classes defined herein were kept ignorant of critical information required for the prosecution

of their claims, without any fault or lack of diligence on their part. Plaintiffs and members of the class could not have reasonably discovered the true, defective nature of the Timing Chain Tensioning System contained in their Class Vehicle until shortly before this class action litigation was commenced.

57.     Nissan has been and remains under a continuous duty to disclose to Plaintiffs and members of the Classes the true character, quality and nature of the Class Vehicles, and to disclose the existence of the material failings of the Timing Chain Tensioning System. Nissan knowingly, affirmatively and actively concealed the true character, quality and nature of the Timing Chain Tensioning System defect contained in Class Vehicles. Plaintiffs and members of the Classes reasonably relied upon Nissan's knowing, affirmative and active concealment and deception. Nissan is, therefore, estopped from relying on any statutes of limitation as a defense in this action.

58.     The causes of action alleged herein has or will only accrue upon discovery of the latent Timing Chain Tensioning System defect, as a result of Nissan's fraudulent concealment of the Timing Chain Tensioning System defect. Plaintiffs and members of the Classes did not discover, nor could they have discovered, through the exercise of reasonable diligence, the true nature of the Timing Chain Tensioning System defect.

## FACTUAL ALLEGATIONS

59.     The Timing Chain Tensioning System is an integrated system of vehicle components whose purpose is to ensure that the engine's various mechanical parts are timed properly in their respective workings so that combustion occurs efficiently as designed. A defective Timing Chain Tensioning System could negatively impact a vehicle's emissions, fuel economy, performance, and engine sustainability.  Incorrect timing in the combustion process

due to a defective Timing Chain Tensioning System may also result in ancillary damage to the vehicle's engine, including spark knock, after-run and/or overheating, which may cause excessive fuel consumption and/or engine damage to parts of the engine outside the Timing Chain Tensioning System.

60.     The primary timing chain connects the crankshaft to the camshafts by means of several, interdependent components, synchronizing the movement of the pistons and the valves. The secondary timing chain connects the intake camshaft and the exhaust camshaft, synchronizing the movement of the intake and exhaust valves, as well as the movement of the pistons.

61.     Defendants knew about the Timing Chain Tensioning System defect in the Class Vehicles.  As a result of Nissan's internal knowledge regarding the Timing Chain Tensioning System defect, Nissan issued multiple TSBs to its dealerships demonstrating its knowledge of how the Timing Chain Tensioning Systems were in part so defective as beyond repair and in need of replacement.  Moreover, Nissan also received constructive notice of the defect through NHTSA-ODI reports, and consumer internet complaints.

62.     Despite this knowledge, Nissan concealed and failed to disclose the defect and the safety risks it poses to the occupants of the Class Vehicles who can experience an inability to accelerate, an inability to maintain speed, and even catastrophic engine failure, potentially rendering the vehicle inoperable while moving, making the Class vehicles unsafe and increasing the risk of a collision.

63.     At the time of sale, Defendants knew of, but did not disclose, the inherent defect. Defendants failed to disclose, and actively concealed, the defect.

64.     Upon information and belief, Defendants purposefully limited the warranty periods, both the Basic Warranty and the Powertrain Coverage Warranty, so that the Timing Chain Tensioning System defect would manifest itself only after its warranty coverage expired, but prior to its expected useful life.  Defendants nonetheless marketed the Class Vehicles to uninformed consumers in order to maximize profits.

65.     Because of the timing chain defect, the purchasers and lessees of class vehicles received less than what was promised to them in their purchase or lease.

66.     Because of the defect, Plaintiffs and class members seeking to sell their vehicles on the used car market receive less value in exchange for their car at the time of resale than if the Class Vehicles had no such defect.

67.     Class Vehicles were all manufactured with the same uniform defective Timing Chain Tensioning System.

## A.    Defendants' Knew About The Timing Chain Tensioning System Defect

68.     All Class Vehicles contained the same defective Timing Chain Tensioning System.

69.     The Timing Chain Tensioning System, which includes the timing chain tensioner, is an integral part of a functioning internal combustion engine. It is responsible for connecting the engine's camshaft to the crankshaft, which in turn control the opening and closing of the engine's valves. These activities must occur at certain specific time intervals. In particular, proper engine functioning requires that the valves open and close in a precise synchronized manner, which is coordinated with the up and down movement of the pistons. The Timing Chain Tensioning System is responsible for ensuring that this occurs. A failing Timing Chain

Tensioning System may negatively impact a vehicle's emissions, fuel economy, performance, and engine sustainability.

70.     NNA maintains a full time Quality Engineer for "Total Customer Satisfaction," at its Nashville Tennessee-area headquarters, whose responsibilities include analysis of "field data (warranty, JD Power, IQS, etc) to identify priority issues to be addressed," and involves engaging in "regular reporting of quality results and action plans to executive management," performing "static and dynamic evaluations of vehicle quality," and reporting "feedback from current model quality into the new product development process." The Quality Engineer reports to the Office of the Overseas Chief Quality Engineer (OCQE). In addition, Nissan maintains a full time Quality Process Engineer at its Nashville Tennessee-based headquarters whose responsibilities are to analyze warranty data and reduce warranty claims "through root cause analysis and countermeasure implementation of assembly and inspection processes" as well as to engage in the "review and investigat[ion of] warranty concerns through communication with dealers, utilization of warranty claims systems and lease car centers" in order to "analyze [the] root cause of warranty concerns using data driven techniques and complete corrective action" and to "develop and present solutions to field concerns in formal reviews with executive management."

71.     Through its personnel whose responsibilities include monitoring defects, analyzing warranty and field data and reporting findings to executive management, as well as through its highly developed internal information and reporting systems, Defendants have been made aware of the defective Timing Chain Tensioning System for some time, but failed to notify Plaintiffs and members of the proposed class during the warranty period and failed to repair the defect free of charge.

72.     Normally, Timing Chain Tensioning Systems are designed to function for periods of time and mileages substantially greater than of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the Timing Chain Tensioning System would fail for significantly longer than the limited periods and mileages identified in Defendants' warranties that were issued at the time of initial purchase or lease.  However, due to the defective Timing Chain Tensioning Systems in the Class Vehicles, the components of the systems failed prematurely, although many failed outside the warranty period, and thus caused injury to the Plaintiffs and Classes.

73.     Many members of the Plaintiff Classes sustained damage to their Timing Chain Tensioning Systems as well as damage to other vehicle parts as a result of the defective Timing Chain Tensioning System,

74.     Defendants acquired their knowledge of the defective Timing Chain Tensioning System  through sources not available to class members, including, but not limited to, pre-release testing and development data, knowledge of the materials selected and used for the components, early consumer complaints, its dealers who are its agents for vehicle repairs, testing conducted in response to those complaints, consumer warranty and post-warranty claims, replacement part sales data, aggregate warranty data compiled from Nissan's network of dealers, and from other internal sources.

75.     Additionally, a mechanic at an authorized Nissan dealership has admitted that, since there is a high speed chain rubbing on plastic, the inferior plastic component of the Timing Chain Tensioning System would soon be worn away, despite any oil lubrication. The mechanic further admitted that this part is supposed to last the lifetime of the car, that it is not a maintenance item, and that it is very difficult to replace. Moreover, he noted that Nissan is aware

that the plastic is of poor quality, and so Nissan replaced it with a part made of different and higher quality material that will not fail.

76.     As a result of Nissan's knowledge, as set forth above, Defendants were aware of the Timing Chain Tensioning System defects. Consequently, in or around 2006 and 2007, Defendants analyzed and ultimately redesigned and changed the materials and related manufacturing of one of the defective Timing Chain Tensioning System components, the primary timing chain guide.

77.     The primary timing chain guide is attached to a fixed pivot. A tensioner is located on the opposite end of the fixed pivot. The tensioner applies pressure to the chain guide, and the guide swivels from the pivot point to apply pressure to the timing chain. The pressure from the guide takes up the slack in the chain and keeps the chain taught so that it does not jump teeth or move out of place. Failure of the chain guide may lead to catastrophic engine failure.

78.     The primary timing chain guide was initially identified by Nissan as part number 13091-7YOOO. In or around 2006 and 2007, however, Part number 13091-7YOOO was analyzed, redesigned, and superseded by part number 13091-ZKOOA. To conceal its knowledge of the Timing Chain Tensioning System defect, Nissan has not disclosed to the public the fact that it changed the materials and manufacturing of the chain guide.

79.     Because the initial materials, manufacture and/or design were defective, Nissan selected more appropriate materials and reconfigured the primary chain guide (13091-ZK00A) to be made with a thicker plastic material, and with a more durable "hook" shape at the top, in order that, in contrast to the original design (13091-7Y000), it would not break, slide down the arm, and/or become unseated from the tensioner.

80.     Notwithstanding the above, although Nissan was well aware of significant numbers of defective Timing Chain Tensioning Systems, Nissan kept it a secret and concealed the problem from Plaintiffs and members of the Class at the time of purchase or lease and during the term of the Basic Warranty and Powertrain Coverage Warranty, and thereafter, and continued to sell vehicles manufactured with defective Timing Chain Tensioning Systems that were prone to premature and unsafe failures. Nissan refuses to offer an adequate remedy, or even publicly acknowledge the problem. Instead, rather than disclose its knowledge of this material information regarding the Timing Chain Tensioning System defects, Nissan actively conceals its knowledge from consumers and only partially reimburses certain consumers that complain loudly about the problem.

81.     Members of the Classes could not have discovered the latent defect in the Timing Chain Tensioning System through any reasonable inspection of their vehicles prior to their purchase or lease.

82.     Defendants failed to adequately ensure proper materials selection, research, design, testing and/or manufacture of the Timing Chain Tensioning System before warranting, advertising, promoting, marketing, and selling it as suitable and safe for use in its intended and/or reasonably foreseeable manner.

83.     Buyers, lessees, and other owners of the Class Vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of their vehicles. Had these buyers and lessees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less

for their vehicles than the amounts they actually paid, or would not have purchased the vehicles altogether.

**B.      Technical Service Bulletins**

84.      In addition to the above, and as a result of Nissan's internal knowledge regarding the Timing Chain Tensioning System defect, Nissan issued multiple TSBs to its dealerships beginning on or around July 2007. Indeed, in the TSBs, Nissan demonstrated its knowledge that components of the Timing Chain Tensioning System were so defective that they were beyond repair and needed to be replaced in their entirety.

85.      The first TSB (Reference No. NTB07-042) on the matter was issued on or around July 17, 2007, and was entitled **"VQ ENGINE; BUZZING WHINING NOISE FROM TIMING CHAIN AREA."** The TSB instructed technicians to "[r]eplace ***both*** secondary timing chains and ***both*** secondary timing chain tensioners (emphasis in original)." This TSB applied to MY 2004-2007 Nissan Maxima vehicles, MY 2004-2007 Nissan Quest vehicles, MY 2004-2006 Nissan Altima vehicles (with VQ35 engines), MY 2005-2007 Nissan Pathfinder vehicles, MY 2005-2007 Nissan Xterra vehicles, and MY 2005-2007 Nissan Frontier vehicles (with VQ40 engines). Despite this serious safety issue that affected six models of the Class Vehicles, rather than disclose the problem to the public and offer an adequate solution, Nissan attempted to conceal the matter.

86.      On April 17, 2009, Nissan issued another TSB (Reference No. NTSB07-042a) which informed technicians that, when a buzzing or whining noise is heard emerging from the secondary timing chains and secondary timing tensioners, those components are faulty and in need of replacement. This TSB applied to 2004-2007 Nissan Maxima vehicles, 2004-2007 Nissan Quest vehicles, 2004-2006 Nissan Altima vehicles (with VQ35 engines), 2005-2007

Nissan Pathfinder vehicles, 2005-2007 Nissan Xterra vehicles, and 2005-2007 Nissan Frontier vehicles (with VQ40 engines).

87.     On November 16, 2009, Nissan issued another TSB (Reference No. NTB09-128) regarding defective Timing Chain Tensioning Systems. This TSB applied to 2005 - 2010 Nissan Pathfinder vehicles, 2005 - 2010 Xterra vehicles, and 2005 - 2010 Frontier vehicles (with VQ40 engines). This TSB informed technicians that a high frequency buzzing or whining noise coming from the secondary Timing Chain Tensioning System, which increases in frequency with engine speed, indicated that the secondary timing chains and the secondary timing chain tensioner "shoes" were faulty and in need of replacement.

88.     On December 14, 2009, Nissan issued another TSB (Reference No. NTSB07-042c) regarding defective Timing Chain Tensioning Systems. This TSB applied to 2004 - 2008 Nissan Maxima vehicles, 2004 - 2006 Nissan Altima vehicles (with VQ35 engines), and 2004 - 2009 Nissan Quest vehicles. This TSB informed technicians that a high frequency buzzing or whining noise coming from the secondary Timing Chain Tensioning System, which increases in frequency with engine speed, indicated that the secondary timing chains and the secondary timing chain tensioner "shoes" were faulty and in need of replacement.

89.     On May 25, 2010, Nissan issued a TSB (Reference No. NTB07-042D), regarding the defective Timing Chain Tensioning System. This TSB applied to 2004-2008 Nissan Maxima vehicles, 2004-2006 Nissan Altima vehicles (with VQ35 engines), and 2004-2009 Nissan Quest vehicles. This TSB informed technicians that a high frequency buzzing or whining noise coming from the secondary Timing Chain Tensioning System, which increases in frequency with engine speed, indicated that the secondary timing chains and the secondary timing chain tensioner "shoes" were faulty and in need of replacement.

90.      Despite issuing multiple TSBs regarding this defect which implicates driver and vehicle safety, Nissan still refused to disclose the outstanding problem to consumers. Nissan's concealment of this material information from owners of the Class Vehicles made it less likely that they would have the defective components of their Timing Chain Tensioning System replaced prior to the expiration of their warranties. Instead, Nissan effectively transferred the cost of replacement of the Timing Chain Tensioning System to owners of the Class Vehicles.

91.      Moreover, in 2009, Nissan issued a press release representing that the Class Vehicles featured a "silent timing chain," not the "whining" and "buzzing" one that it knew consumers were actually experiencing in their vehicles. Specifically, the press release1 stated:

> Like others in the VQ family, the 4.0-liter version includes such advanced design features as lightweight aluminum block and cylinder heads, Continuous Valve Timing Control (CVTCS), Nissan variable Induction Control System (NICS), **silent timing chain** and microfinished camshaft and crankshaft surfaces.

(Emphasis Added.)

## C.      Complaints by Other Class Members

92.      Plaintiffs' experiences are by no means isolated or outlying occurrences. Nissan, through its dealerships, agents, servants, and employees, was also put on actual and/or constructive notice of the defective Timing Chain Tensioning System from the NHTSA-ODI reports, dating back to October, 2006, and most likely earlier. The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats." *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed August 7, 2014) ("If you think you have a problem, we want you to tell us about it.").

93.      The NHTSA-ODI reviews and analyzes consumer complaints to determine whether to issue recalls. The Vehicle Safety Complaint filing form specifically includes required

fields for the name, telephone number, and email address for the complainant, in addition to VIN number for the vehicle (which are apparently tested by an online database). *See* https://wwwodi.nhtsa.dot.gov/VehicleComplaint/index.xhtml (last accessed August 7, 2014). NHTSA-ODI does not share complainants' personal information with the general public, and a complaint is only added to a public NHTSA database after it removes all information from complaint fields that personally identify a complainant. *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed August 7, 2014).

94. NHTSA-ODI specifically states on its website that: Government analysts review each complaint in a timely fashion. If warranted, NHTSA-ODI will open an investigation to determine if a safety defect trend exists. Some of these investigations result in safety recalls. While a consumer may or may not be contacted by a NHTSA-ODI investigator to clarify their submitted information, all reports are reviewed and analyzed for potential defect trends. *Id.*

95. Thus, NHTSA-ODI complaints are made by individuals who must identify themselves and must enter detailed contact information and an accurate VIN number. These complaints are then reviewed and analyzed by the federal government.

96. Various complaints by purchasers of Nissan Class Vehicles with the NHTSA have been filed regarding the premature failure of the Timing Chain Tensioning System. The following are a small sampling of complaints regarding the premature failure of the Timing Chain Tensioning System reported to the NHTSA.

97. A complaint filed on October 31, 2006, regarding the powertrain in a 2004 Nissan Quest stated in summary that:

> A LOUD TICKING SOUND WHEN STARTING UP COLD FOR ABOUT 5 MINUTES BEFORE IT WARMS UP. WE REPORTED THIS A FEW MONTHS AGO AND WERE TOLD THAT IT WAS THE VARIABLE TIMING CHAIN, THEN

WERE TOLD NO IT'S NORMAL, THEN IT'S THE VTC, NO THE ENGINEER SAYS IT'S NORMAL. THEY ARE REFUSING TO REPAIR. IT IS NOT A NORMAL SOUND.

98.    A complaint filed on July 22, 2008, regarding the powertrain on a 2005 Pathfinder

stated in summary that:

> THE DEALER POINTED OUT THAT THERE WAS A BUZZING WHINING NOISE COMING FROM ONE OR BOTH SECONDARY TIMING CHAINS AND CAMSHAFT SPROCKET AREAS. I HAD TO REPLACE BOTH SECONDARY 12 TIMING CHAINS AND BOTH SECONDARY TIMING CHAIN TENSIONERS AT 61,000 MILES. COST: $2,148.00. PLEASE SEE NISSAN TECHNICAL SERVICE BULLETIN: CLASSIFICATION: EM07-001 NTB07-042. REFERENCE: DATE: JULY 17, 2007. I BELIEVE THIS ITEM SHOULD BE A RECALL. THIS IS OBVIOUSLY A MISTAKE ON NISSANS BEHALF WHEN THEY USED INAPPROPRIATE AND UNSAFE PARTS. I ASKED NISSAN TO COVER THIS ITEM UNDER WARRANTY, WHICH THEY QUICKLY REFUSED. I WAS 1,000 MILES PAST MY DRIVE TRAIN WARRANTY BUT THIS HAD BEGUN WAY BEFORE THAT POINT. I FIND IT BOTH AMUSING AND CONVENIENT THAT NISSAN NEVER MENTIONED THIS PROBLEM TO ITS CUSTOMERS, AND ME SPECIFICALLY UNTIL I WAS OUT OF WARRANTY; THE SERVICE REPORT IS DATED JULY 17, 2007, EXACTLY ONE YEAR PRIOR TO MY VEHICLE NEEDING REPAIR. I BELIEVE THIS IS A CLEAR ADMITTANCE OF GUILT ON BEHALF OF NISSAN.

99.    A complaint filed on January 10, 2012, regarding the engine and engine cooling

on a 2006 Nissan Altima stated in summary that:

> APPROXIMATELY 1 1/2 YEARS AGO, I STARTED HEARING A CLICKING NOISE COMING OUT OF MY 3.5L ENGINE. I TOOK THE CAR TO A DEALER AND HE SAID I NEEDED A NEW ENGINE ($6000). I DROVE THE CAR FOR ANOTHER 3K MILES AND THE NOISE CONTINUED AND BECAME LOUDER. IT SOUNDS LIKE AN [XXX] MOVIE PROJECTOR. I TOOK THE CAR TO ANOTHER NISSAN DEALER WHO TOLD ME THE PRIMARY TIMING CHAIN GUIDE WAS CAUSING THE NOISE. I SUSPECT THAT NISSAN KNOWS OF THIS DEFECT IN THE TIMING CHAIN WHICH CAUSES THE TIMING CHAIN GUIDE TO BECOME DAMAGED. I

> HAVE ALSO READ IT HAPPENS BETWEEN 20K TO 80K MILES. ANYWAY, IF THE TIMING CHAIN JUMPS IT CAUSE SERIOUS INTERNAL ENGINE DAMAGE. I HAVE TALKED WITH NISSAN CONSUMERS AFFAIR GROUP WITH NO RESULTS. I THINK THIS SHOULD BE INVESTIGATED AND NISSAN OWNERS WARNED OF THIS ENGINE DEFECT.

100.   A complaint filed on November 29, 2012, regarding the engine on a 2006 Nissan Frontier stated in summary that:

> THE CONTACT OWNS A 2006 NISSAN FRONTIER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 35 MPH, HE HEARD A WHINING NOISE COMING FROM THE FRONT END OF THE VEHICLE WHILE ACCELERATING. THE VEHICLE WAS TAKEN TO A DEALER FOR DIAGNOSTIC TESTING. THE TECHNICIAN STATED THAT THE TIMING CHAIN GUIDE NEEDED TO BE REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND ADVISED THE CONTACT THAT THE VEHICLE WAS NOT INCLUDED IN ANY RECALLS. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 44,000 AND THE CURRENT MILEAGE WAS 45,000. THE VIN WAS NOT AVAILABLE.

**D.     Safety Concerns**

101.   In connection with its failure to disclose the fact that the Timing Chain Tensioning System in Class Vehicles is prone to premature failure, Nissan also risks the safety of passengers riding in those vehicles. When the Class Vehicles' Timing Chain Tensioning System fails, drivers of the Class Vehicles can experience an inability to accelerate, an inability to maintain speed, and even catastrophic engine failure, potentially rendering the vehicle inoperable while the vehicle is still in a moving state. As a result, drivers are unable to keep up with the normal flow of traffic, and experience an increased risk of collision. The reasonable expectation that Class Vehicles are safe to drive and ride in was, and is, material to Plaintiffs and members of the Classes and their purchase or lease of their respective Class Vehicle.

102.     The potential for unexpected catastrophic engine failure caused by the defect endangers the lives of Plaintiffs and members of the Class.  Many consumers have even reported serious safety concerns caused by the defective Timing Chain Tensioning System.

103.     Numerous drivers of the Class Vehicles have reported their safety concerns to the NHTSA. Some of those reports include the following:

Make: Nissan
Model: Quest
Year: 2007

Summary:

LOUD SQUEALING NOISE FROM SECONDARY TIMING CHAIN TENSIONERS IN ENGINE. WAS TOLD IF TENSIONERS BREAK, TIMING CHAIN WOULD RELEASE INTO ENGINE AND CAUSE A HAZARD. DEALERSHIP FIXED IT-$1700 AND THE SECONDARY TENSIONERS ARE WORN AND CHEAP. THE NEW ONES ARE MUCH DIFFERENT. IP I HAD NOT HAD THE SQUEALING NOISE, THE TIMING CHAIN WOULD HAVE BEEN RELEASED INSIDE THE ENGINE.

Make: Nissan
Model: Quest
Year: 2004

Summary:

MY NISSAN QUEST HAS BEEN MAKING A RATTLING NOISE THAT IS PROGRESSIVELY GETTING WORSE. I TOOK IT IN TODAY AND WAS TOLD THAT I HAD PROBLEMS WITH THE TIMING CHAIN AND THAT I SHOULD TAKE IT TO A DEALER OR ENGINE SHOP THAT IS EQUIPPED TO FIX SUCH AN ISSUE. ONE OF THE REASONS I FAVORED BUYING THIS CAR WAS BECAUSE OF THE FACT THAT NISSAN USES A TIMING CHAIN RATHER THAN A TIMING BELT. THUS, I WOULDN'T HAVE THE EXPENSE OF REPLACING A TIMING BELT IN THE FUTURE. I WAS LEAD TO BELIEVE THAT TIMING CHAINS WOULD NOT BE SOMETHING THAT I WOULD NEED TO FIX. BECAUSE THIS PROBLEM IS PREVALENT AMONG QUEST OWNERS, I BELIEVE THAT NISSAN

SHOULD RECALL THEIR VEHICLES THAT SUFFER FROM
THE SAME DESIGN FLAW. IF NISSAN DOESN'T ADDRESS
THIS ISSUE,
SOMEONE IS GOING TO GET INJURED OR KILLED AS A
RESULT OF ONE OF THEIR FAULTY TIMING BELTS
BREAKING WHILE ONE OF THEIR FAULTV CARS IS
BEING DIUVEN.

## **CLASS ACTION ALLEGATIONS**

104.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide

class pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3).

Specifically, the nationwide class consists of:

> All persons in the United States who purchased or leased the Class
> Vehicles (the "Nationwide Class").

105.    In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil

Procedure 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that

the Court declines to certify the above Nationwide Class:

> Massachusetts Class: All persons who purchased or leased in the
> Commonwealth of Massachusetts Class Vehicles.
> Oregon Class: All persons who purchased or leased in the State of
> Oregon Class Vehicles,
>
> Colorado Class: All persons who purchased or leased in the State
> of Colorado Class Vehicles,
>
> Texas Class: All persons who purchased or leased in the State of
> Texas Class Vehicles.
>
>
> North Carolina Class:  All persons who purchased or leased in the
> State of North Carolina Class Vehicles.

106.    The Massachusetts, Oregon, Colorado, Texas, , and North Carolina Classes shall

be referred to herein as the "State Classes." The Nationwide and State Classes shall be referred

to herein as "the Classes".   Excluded from the Nationwide Class and State Classes are

Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Nationwide Class and the State Classes definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

107.    Plaintiffs reserve the right to establish additional subclasses where appropriate.

108.    **Numerosity**: The Nationwide Class and State Classes are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe hundreds of thousands of Class Vehicles have been sold and leased throughout the United States..

109.    In particular, Plaintiffs are informed and believe that between December 2004 through September 2010, Defendant sold or leased at least 768,333 Class vehicles for three of the models:  Pathfinder, Xterra and Frontier, Model Years 2005 through 2010.  At this time, Plaintiffs do not have access to the sales figures for Class Vehicles for each of the State Classes, but the nationwide sales strongly indicate that there are at least thousands or tens of thousands members of each State Class.

110.    **Commonality**: There are questions of law or fact common to all members of the Classes that predominate over any questions affecting individual members. These questions include but are not limited to the following:

    a.    whether the Timing Chain Tensioning System in Class Vehicles are predisposed to fail prematurely;

    b.    whether the Timing Chain Tensioning System in Class Vehicles contain a defect in materials, manufacturing and/or workmanship;

c.      whether the Timing Chain Tensioning System in Class Vehicles contain a design defect;

d.      whether the defect is common to all Class Vehicles;

e.      if so, whether the defective Timing Chain Tensioning System causes problems in the operation of Class Vehicles and the nature of those problems;

f.      whether Defendants knowingly failed to disclose the existence and cause of the defective Timing Chain Tensioning System in Class Vehicles;

g.      whether the Defendants' conduct violated the Consumer Fraud Statutes of Oregon, Colorado, Texas, North Carolina and/or Massachusetts.;

h.      whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the defective Timing Chain Tensioning System, Plaintiffs and members of the Classes have suffered ascertainable loss of moneys and/or property and/or value;

i.      whether Plaintiffs and members of the Classes are entitled to monetary damages and/or other remedies, and, if so, the nature of any such relief;

j.      whether Plaintiffs and members of the Classes are entitled to be notified and warned about the defect, and are entitled to the entry of final and injunctive relief compelling Defendants to issue a notification and warning to all class members concerning such a defect;

k.      whether Defendants deliberately or otherwise misrepresented or failed to disclose material facts to Plaintiffs and members of the Classes;

l.      whether Defendants were unjustly enriched at the expense of the Classes; and

m.      whether Defendants actively concealed material facts from Plaintiffs and members of the Classes for the unlawful purpose of transferring the cost of the Timing Chain Tensioning System repairs/replacements to consumers.

111.    **Typicality**: Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased a class vehicle with a defective Timing Chain Tensioning System, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained monetary injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members they represent.

112.    **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in pursuing complex class action litigation and intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

113.    **Predominance**: The putative class members are bound by a mutual interest in the adjudication of a common grievance – namely, because of Defendants' common course of conduct, putative class members were subject to the same misrepresentations and omissions, regarding, the uniform defect contained in Class Vehicles.   Questions regarding the defect, Defendants' knowledge of the defect and Defendants' failure to disclose the defect will predominate over individual questions.

114.    **Superiority**: Class action treatment is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes to effectively redress the wrongs done to each of them on an individual basis. Even if the members of the Classes had the resources necessary for such individual litigation, the court system does not.

Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action mechanism presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

115.    Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

116.    The claims of all plaintiffs herein arise out of a common nucleus of operative facts for a variety of reasons, including but not limited to the fact that all vehicles are the same models for all of the claims, all of the subject timing chains have the same alleged defects and issues, the Technical Service Bulletins issued by Defendant were common to the same alleged defects, one warranty was made to all plaintiffs relating to each claim, the Defendant is the same for each of the claims, the alleged omission or omissions are common to each of the claims, plaintiffs will rely on common evidence for all of the state claims and, as this is alleged to be a class action, any motion for class certification should be made only once for all of the claims based on this common nucleus of operative facts.

117.    Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue a course of action which will result in further damages to Plaintiffs and the members of the Classes.

## **COUNT I**

## VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT
### (<u>On Behalf of the Oregon Class</u>)

118.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

119.    Defendants' practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, the Weissenburgers and the Oregon Class members to purchase and/or lease the above-mentioned Class Vehicles with the defective Timing Chain Tensioning System.

120.    Defendants who sold and/or leased the Class Vehicles knowingly concealed that the installed defective Timing Chain Tensioning System was prone to premature failure.

121.    Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)      Defendants failed to give consumers who purchased or leased Class Vehicles adequate warnings and notices regarding the defects and problems with the Timing Chain Tensioning System, despite possessing prior knowledge of the inherent defects to the Timing Chain Tensioning System;

(b)      Defendants failed to disclose to the Weissenburgers and the Oregon Class members, either through warnings or recall notices, and/or actively concealed from them that the Timing Chain Tensioning System was defective and prone to premature failure, despite the fact that it learned of the defects as early as 2004.

(c)      Defendants caused the Weissenburgers and the Oregon Class members to expend sums of money at its dealerships and elsewhere to repair and/or replace the Timing Chain Tensioning System components, despite possessing prior knowledge of the defects at the time when Defendants placed the Class Vehicles into the stream of commerce; and

(d)     Defendants occasionally have admitted to some Class Vehicle owners and/or lessees, by its words and action, that the Timing Chain Tensioning System should be covered by its warranties, but then denied that assessment to others. Defendants thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

122.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendants concealed the true defective nature of the Timing Chain Tensioning System contained in Class Vehicles in violation of Oregon's Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq*.

123.    In making these material omissions to prospective customers, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

124.    Members of the public, including the Weissenburgers and members of the classes, were deceived by Defendants' omissions..

125.    Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle. Said deceptive acts and practices aforementioned are material and impact a consumer's decision to buy or lease a vehicle. The sale and distribution in Oregon of the Class Vehicles was a consumer-oriented.

126.    Defendants' wrongful conduct caused the Weissenburgers and the Oregon Class to suffer an ascertainable loss by causing them to incur substantial expense to repair the defective Timing Chain Tensioning System that should have been repaired free of charge under its warranties. In addition to direct monetary losses, Plaintiffs and the Oregon Class have suffered an ascertainable loss by receiving less than what was promised in their vehicle purchase/lease contracts.

127.    Specifically, the Weissenburgers and members of Oregon Class have paid for a vehicle that is now worth significantly less because of the existence of the defective Timing Chain Tensioning Systems contained therein and the damage it causes to the Class Vehicles. Moreover, the purchase price of the Class Vehicles included a warranty program that was supposed to provide free repairs for all defects in materials and/or workmanship that occurred during the warranty period.

128.    Because the Weissenburger Plaintiffs and members of the Oregon Class were denied that warranty coverage because of the period and mileage limitations contained therein, they were deprived of the value of their purchased warranty due to Defendants' fraudulent concealment.

129.    A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by the Weissenburgers and the Oregon Class. Had the defective Timing Chain Tensioning System in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or taken affirmative steps to prevent  further expense or catastrophic damage to their vehicles by fixing such defect during the warranty periods.

## COUNT II

### VIOLATION OF COLORADO'S CONSUMER PROTECTION ACT
### (On Behalf of the Colorado Class)

130.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

131.    Defendants' practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiffs Fry and Cooney and the Colorado Class

members to purchase and/or lease the above-mentioned Class Vehicles with the defective Timing Chain Tensioning System.

132.    Defendants who sold and/or leased the Class Vehicles knowingly concealed that the defective Timing Chain Tensioning System installed in the vehicles were prone to premature failure.

133.    Defendants sold the Class Vehicles as new and unblemished vehicles, and omitted all information regarding their defective Timing Chain Tensioning Systems despite Defendants' knowledge of the same and the safety risks which the defective created.

134.    Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)    Defendants failed to give consumers who purchased or leased Class Vehicles adequate warnings and notices regarding the defects and problems with the Timing Chain Tensioning System despite possessing prior knowledge of the inherent defects to the Timing Chain Tensioning System;

(b)    Defendants failed to disclose to Plaintiffs Fry and Cooney and the Colorado Class members, either through warnings or recall notices, and/or actively concealed the fact from them that the Timing Chain Tensioning Systems contained in Class Vehicles were defective and prone to premature failure despite having learned of the defects as early as 2004.

(c)    Defendants caused Plaintiffs Fry and Cooney and the Colorado Class members to expend sums of money at its dealerships and elsewhere to repair and/or replace Timing Chain Tensioning System components despite the fact that Defendants had prior knowledge of the defects at the time when said vehicles were placed into the stream of commerce; and

(d)    Defendants occasionally have admitted to some Class Vehicle owners or lessees by its words and action that the Timing Chain Tensioning Systems should be covered by the

vehicles' warranties, but denied this to others. Defendants thereby maintained a secret warranty practice for some owners and lessees, while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

135.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendants have, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the Timing Chain Tensioning System for the Class Vehicles in violation of the Colorado's Consumer Protection Act ("CCPA"), section 6-1-101 *et seq.*

136.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendants have misrepresented and/or knowingly and intentionally concealed material facts and breached their duty not to do so.

137.    Members of the public were deceived by and relied upon Defendants' affirmative misrepresentations and failures to disclose.

138.    Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing a Class Vehicle. Said deceptive acts and practices aforementioned are material. The sale and distribution in Colorado of the Class Vehicles was a consumer-oriented.

139.    Defendants wrongful conduct caused Plaintiffs Fry and Cooney and the Colorado Class members to suffer an ascertainable loss by causing them to incur substantial expense to repair the defective Timing Chain Tensioning System that should have been repaired free of charge under its warranties. In addition to direct monetary losses, Plaintiffs and the Colorado

Class have suffered an ascertainable loss by receiving less than what was promised. Specifically, Plaintiffs have paid for a vehicle that is now worth significantly less because of the existence of the defective Timing Chain Tensioning System contained therein and the damage it causes to the Class Vehicles.  Because the purchase price of the Class Vehicles included a warranty program that was supposed to provide free repairs for all defects in material or workmanship that occurred during the warranty period, Plaintiffs and Colorado Class members did not receive full value for their purchase, but instead were deprived of the value of this warranty due to Defendants' fraudulent concealment.

140.    A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs Fry and Cooney and the Colorado Class. Had the defective Timing Chain Tensioning System in the Class Vehicles been disclosed, consumers would not have purchased their vehicles, would have paid less for the Class Vehicles had they decided to purchase them, or taken affirmative steps to incur further expense by fixing such defect within the warranty periods.

## COUNT III

### VIOLATION OF TEXAS' DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT
### (On Behalf of the Texas Class)

141.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

142.    Defendants' practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff Clinton Stewart and the Texas Class members to purchase and/or lease the above-mentioned Class Vehicles with the defective Timing Chain Tensioning System.

143.     Defendants who sold and/or leased the Class Vehicles knowingly concealed that the defective Timing Chain Tensioning System installed in the Class Vehicles was prone to premature failure.

144.     Defendants sold the Class Vehicles as new and unblemished vehicles and omitted all information regarding their defective Timing Chain Tensioning Systems, despite Defendants' knowledge of the same, and the safety risks the defect created.

145.     Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)     Defendants actively and knowingly omitted to inform  Plaintiff Clinton Stewart and the Texas class members at the time of purchase or lease that the Class Vehicles, including the Timing Chain Tensioning System, that said Class Vehicles,  contained material defects, were not in good working order, and were defective and otherwise unmerchantable;

(b)     Defendants failed to give adequate warnings and notices regarding the use, defects and problems with the Class Vehicles containing defective Timing Chain Tensioning Systems to consumers who purchased or leased said vehicles despite possessing prior knowledge of the inherent defects to the Timing Chain Tensioning System;

(c)     Defendants failed to disclose to Plaintiff Clinton Stewart and the Texas Class members, either through warnings or recall notices, and/or actively concealed the fact from them that the Timing Chain Tensioning Systems contained in their Class Vehicles were defective and prone to premature failure, despite having learned of the defects as early as 2004.

(d)     Defendants caused Plaintiff Clinton Stewart and the Texas Class members to expend sums of money at its dealerships and elsewhere to repair and/or replace Timing Chain Tensioning System components contained in their vehicles despite Defendants' prior knowledge of the defects when placing said vehicles into the stream of commerce.

(e)     Defendants occasionally have admitted to some Class Vehicle owners or lessees by its words and action that the Timing Chain Tensioning Systems contained in their vehicles should be covered by its warranties, but denied this proposition to others. Defendants thereby maintained a secret warranty practice for some while denying it for others; thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

146.     Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendants have, by the use of false and/or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the Timing Chain Tensioning System for the Class Vehicles in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA") Tex. Bus. & Com. Code §§17.41-63.

147.     In making these material omissions to prospective customers, all while knowing such representations to be false, Defendants misrepresented and/or knowingly and intentionally concealed material facts and breached their duty not to do so.

148.     Members of the Texas Class were deceived by and relied upon Defendants' affirmative misrepresentations and failures to disclose.

149.     Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle. Said deceptive acts and practices aforementioned are material. The sale and distribution in Texas of the Class Vehicles was a consumer-oriented.

150.     Defendants wrongful conduct caused Plaintiff Clinton Stewart and the members of the Texas Class to suffer an ascertainable loss by causing them to incur substantial expense to repair the defective Timing Chain Tensioning Systems contained in their vehicles that should

have been repaired free of charge under their vehicles' warranties. In addition to direct monetary losses, Plaintiff Clinton Stewart and members of the Texas Class have suffered an ascertainable loss by receiving less value than what was promised to them at the time of sale or lease. Specifically, Plaintiff Clinton Stewart and members of the Texas Class paid for a vehicle that is now worth significantly less because of the existence of the defective Timing Chain Tensioning System and the damage it causes to the Class Vehicles.  Because the purchase price of the Class Vehicles included a warranty program that was supposed to provide free repairs for all defects in materials or workmanship arising during the warranty period, Plaintiff Stewart and Texas Class members were deprived of the value of this warranty due to Defendants' fraudulent concealment.

151.    A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiff Clinton Stewart and the Texas Class. Had the defective Timing Chain Tensioning System in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or taken affirmative steps to limit further expense or prevent the catastrophic damage to their vehicles by fixing such defect during the Warranty period.

## COUNT IV

### VIOLATION OF MASSACHUSETTS'S CONSUMER PROTECTION ACT
### (On Behalf of the Massachusetts Class)

152.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

153.    Defendants were engaged in trade or commerce in marketing and selling the Class Vehicles.

154.    Defendants have committed unfair and deceptive business acts and practices as detailed herein, in violation of Ch. 93A, §§ 2 and 9.

155.    As a direct result of Defendants' unfair and deceptive business conduct, Plaintiffs and the members of the Massachusetts Class have sustained monetary damages.  Defendants' violations of Chapter 93A were willful, knowing and made in bad faith.

156.    Demand on behalf of Plaintiffs Silver and Duncan and the Massachusetts Class was made upon Nissan on or about May 27, 2016, pursuant to Chapter 93A, §§2 and 9, more than thirty (30) days prior to the filing of this claim for relief under Chapter 93A, and Nissan failed to offer relief that is fair and reasonable in relation to the injury suffered by Plaintiffs Silver and Duncan and the Massachusetts Class.

157.    Moreover, by engaging in the conduct described above, Nissan violated at least 940 Code Mass. Regs. § 3.16 of the General Regulations of the Massachusetts Attorney General, which provides that "[w]ithout limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A, § 2 if:   (1) it is oppressive or otherwise unconscionable in any respect; or (2) [a]ny person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; (3) [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or (4) [i]t violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2."   Nissan's violation of this regulation constitutes a further violation of Chapter 93A.

## COUNT V

### VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. § 75-1.1, et seq.
### (On Behalf of the North Carolina Class)

158.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

159.     Defendants' practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff Lin Stewart and the North Carolina Class members to purchase and/or lease the above-mentioned Class Vehicles with the defective Timing Chain Tensioning System.

160.     Defendants who sold and/or leased the Class Vehicles knowingly concealed that the installed defective Timing Chain Tensioning System was prone to premature failure.

161.     Defendants misrepresented the characteristics, benefits and qualities of the Class Vehicles.

162.     Defendants misrepresented the characteristics, benefits and qualities of the Class Vehicles' warranty.

163.     Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)     Defendants failed to inform Plaintiff Lim Stewart and the North Carolina class members at the time of purchase or lease that the Class Vehicles, including their Timing Chain Tensioning Systems, contained a material defect;

(b)     Defendants failed to give consumers who purchased or leased Class Vehicles adequate warnings and notices regarding the defects and problems with the Timing Chain Tensioning System, despite possessing prior knowledge of the inherent defects to the Timing Chain Tensioning System;

(c)     Defendants failed to disclose to Plaintiff Stewart and the North Carolina Class members, either through warnings or recall notices, and/or actively concealed from them that the

Timing Chain Tensioning System was defective and prone to premature failure, despite the fact that it learned of the defects as early as 2004.

(d)     Defendants caused Plaintiff Stewart and the North Carolina Class members to expend sums of money at its dealerships and elsewhere to repair and/or replace the Timing Chain Tensioning System components, despite possessing prior knowledge of the defects at the time when Defendants placed the Class Vehicles into the stream of commerce.

(e)     Defendants occasionally have admitted to some Class Vehicle owners and/or lessees, by its words and action, that the Timing Chain Tensioning System should be covered by its warranties, but then denied that assessment to others. Defendants thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

164.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendants have, by the use of material omissions concealed the true defective nature of the Timing Chain Tensioning System contained in Class Vehicles in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1, *et seq.*

165.    In making these material omissions to prospective customers while knowing such representations to be false, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

166.    Members of the public, including Plaintiff Lim Stewart and members of the North Carolina Class, were deceived by and relied upon Defendants' failures to disclose in purchasing their vehicles.

167.    Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle. Said deceptive acts and practices aforementioned are material and impact a consumer's decision to buy or lease a vehicle. The sale and distribution in North Carolina of the Class Vehicles was a consumer-oriented act, in and affecting commerce in the state of North Carolina.

168.    A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the North Carolina Class. Had the defective Timing Chain Tensioning System in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or taken affirmative steps to prevent further expense or  catastrophic damage to their vehicles by fixing such defect within the Warranty periods.

## COUNT VI

### BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class or, Alternatively, of the State Classes)

169.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

170.    Plaintiffs and the Class members have entered into certain written warranty agreements with Nissan including the Basic Warranty and Powertrain Warranties. Pursuant to the Basic Warranty, Nissan agreed it would provide Plaintiffs and the Class members with Class Vehicles that were in proper working order and would make all such replacements or repairs "needed to correct defects in materials or workmanship" of all parts and components of each new Class Vehicle supplied by Nissan. Nissan was therefore obligated to repair and/or service any defects or problems with the defective Timing Chain Tensioning System that Plaintiffs and the Class members experienced. In exchange for these duties and obligations, Nissan received

payment of the purchase or lease price for the above-mentioned Class Vehicles from Plaintiffs and the Plaintiff Classes.

171.     The Basic Warranty's express terms were breached by Defendants with respect to Plaintiffs and all Class members who did not exceed the 36,000 mile/36 months since Defendants refused to repair the defective Timing Chain Tensioning System even when the symptoms of the inherent defect appeared within the period of Basic Warranty coverage. In addition and alternatively, the Powertrain Coverage Warranty was breached by Defendants to the extent such symptoms and Timing Chain defects and/or resultant transmission problems arose within the period of the 60 month/60,000 mile Powertrain Coverage, and Nissan refused to repair the defective Timing Chain Tensioning System under warranty.

172.     In addition, Defendants were and continue to be aware that the defective Timing Chain Tensioning System will continue to be prone to premature failure even after either of the above referenced warranty periods have lapsed. Such conduct on the part of Defendant is patently unconscionable, thus rendering the warranty's durational limitations unenforceable in light of Nissan's knowledge and awareness of the Class Vehicles' basic design defects in their Timing Chain Tensioning Systems prior to selling or leasing the vehicles.

173.     The durational limitation in the warranty, as well as the unconscionable interpretation of the scope of warranty coverage by Defendants, are unenforceable as unconscionable provisions under state law, because, among other reasons, they fail the warranty's essential purpose, and the buyer loses a substantial benefit of the bargain.

174.     Moreover, Nissan used its superior knowledge of the existing Timing Chain Tensioning System defects to formulate and offer a warranty which it knew, or should have known, would not due to the time and mileage limitations cover this materials defect known to

Nissan to exist in the Class Vehicles at the time of purchase or lease by Plaintiffs and the Class members. Nissan breached the express warranty in providing Plaintiffs and the Class members with Class Vehicles that contained a defect known to Defendants at the time of delivery of the Class Vehicles, and then refused to repair or replace the defective component when such components failed outside the warranty periods which were unconscionable given Defendants' knowledge of the defect.

175.    Plaintiffs gave notice to Defendants of their Class Vehicle's defect through its Dealers, agents, and customer service division, and then gave Defendants a chance to repair the defect under the Basic Warranty and/or the extended Powertrain Coverage, which Defendants refused.

176.    Nissan also violated the Basic Warranty and/or Powertrain Warranty and any implied covenant of good faith inherent in such agreement by selling Plaintiffs' and the Class members' Class Vehicles with limited warranties under circumstances in which Nissan knew or should have known that the defective Timing Chain Tensioning System would fail prematurely, but after the warranty period has passed.

177.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## COUNT VII

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class or, Alternatively, the State Classes)

178.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

179.    Defendants are "merchants" as defined by the Uniform Commercial Code ("UCC").

180.    The Class Vehicles are "goods" as defined under the UCC.

181.    Defendants impliedly warranted that the Class Vehicles were of a merchantable quality.

182.    Defendants breached the implied warranty of merchantability, as the Class Vehicles were not of a merchantable quality since the Timing Chain Tensioning Systems contained in said vehicles suffer from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

183.    As a direct and proximate result of the breach of said warranties, Plaintiffs and the Plaintiff Classes were injured, and are entitled to damages.

184.    Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

185.    The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and the Class members. Among other things, Plaintiffs and the Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Nissan and the Class members, and Nissan knew, or should have known, that the Class Vehicles were defective at the time of sale and that the Timing Chain Tensioning System would fail well before their useful lives.

186.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## COUNT VIII

### UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class or, Alternatively, the State Classes)

187.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

188.    Defendants distributed the Class Vehicles into the stream of commerce with the knowledge that these vehicles would be purchased or leased by consumers based on a reasonable expectation that the Timing Chain Tensioning System in the vehicles would be free of defects.

189.    Defendants misrepresented the characteristics, benefits and qualities of the Class Vehicles.

190.    Defendants misrepresented the characteristics, benefits, and qualities of the Class Vehicles' warranty.

191.    Defendants distributed the Class Vehicles with the knowledge that the defective Timing Chain Tensioning System made these Class Vehicles worth less than the defect-free price being paid for them.

192.    Defendants knew that, if it disclosed its knowledge of the existence of the defective Timing Chain Tensioning Systems contained in Class Vehicles, it would be liable for replacement or repair of the defective Timing Chain Tensioning Systems, and would face adverse consequences to its reputation and sales. In addition, failing to disclose the defective Timing Chain Tensioning Systems allowed Defendants to generate significant additional revenues from the costs associated with the replacement of the defective Timing Chain

Tensioning System, including the purchase of the necessary replacement parts from Defendants. As a result, Nissan sought to avoid this liability and the adverse consequences, and at the same time also sought to enhance their revenue stream, by intentionally and fraudulently concealing the defective Timing Chain Tensioning System.

193.     Defendants received an economic benefit at the expense of the consumers of the Class Vehicles.

194.     In the circumstances, principles of equity and good conscience make it unjust for Defendants to retain the benefit conferred on it by consumers of the Class Vehicles and Defendants should be required to pay for this benefit.

## COUNT IX

### BREACH OF CONTRACT
### (On Behalf of the Nationwide Class or, Alternatively, the State Classes)

195.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

196.     Plaintiffs and Class members have entered into certain contracts and warranty agreements with Nissan. Pursuant to these contracts and agreements, Nissan agreed to provide Plaintiffs and the Class members with Class Vehicles that were in proper working order and fit for their intended purpose. This included the defective Timing Chain Tensioning Systems of these vehicles. Nissan was further obligated to repair and/or service any defects or problems with the vehicles that Plaintiffs and the Class members experienced. In exchange for these duties and obligations, Nissan received payment of the purchase or lease price for the above-mentioned Class Vehicles from Plaintiffs and the Class members.

197.     Plaintiffs and the Class members satisfied their obligations under these contracts, warranties and agreements.

198.    Nissan failed to perform as required by the contracts and agreements, and breached said contracts and agreements in providing Plaintiffs and the Class members with Class Vehicles containing defective Timing Chain Tensioning Systems and failing to repair such defects.

199.    Nissan also violated the implied covenant of good faith inherent in such contracts and agreements by selling Plaintiffs and the Class members vehicles with limited warranties under circumstances in which Nissan knew that the defective Timing Chain Tensioning Systems would often fail beyond the warranty periods.

200.    As a result of the foregoing, Plaintiffs and the Class members are entitled to damages.

## COUNT X

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (On Behalf of the Nationwide Class or, Alternatively, the StatesClasses)

201.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

202.    Plaintiffs bring this Count on behalf of the Nationwide Class or, alternatively, on behalf of the State Classes. Plaintiffs satisfy the Magnuson–Moss Act's jurisdictional requirement because they allege jurisdiction based upon CAFA diversity jurisdiction.

203.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

204.    Nissan is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

205.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

206.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

207.    Nissan's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

208.    Nissan breached these warranties as described in more detail above. Without limitation, the Class Vehicles contain the defective Timing Chain Tensioning Systems. The Class Vehicles share a common design defect in that the Class Vehicles fail to operate as represented by Nissan.

209.    Plaintiffs and the Nationwide and State Class members have had sufficient direct dealings with either Nissan or its agents (dealerships and technical support) to establish privity of contract between Nissan, on one hand, and Plaintiffs and each of the Nationwide and State Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Nationwide and State Class members are intended third-party beneficiaries of contracts between Nissan and its dealers, and specifically, of Nissan's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

210.    Affording Nissan a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile under these circumstances. Indeed, Plaintiffs have already provided such opportunity. At the time of sale or lease of each Class Vehicle, Nissan knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted.  Nonetheless, Nissan failed to

rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Nissan a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

211.    Plaintiffs and the Nationwide and State Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Nissan is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Nationwide and State Class members have not re-accepted their Class Vehicles by retaining them.

212.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the Sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

213.    Plaintiffs, individually and on behalf of the Nationwide and State Class members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XI

### INJUNCTIVE AND DECLARATORY RELIEF
### (On Behalf of the Nationwide Class or, Alternatively, the State Classes)

214.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

215.    There is a justiciable dispute as to whether the Timing Chain Tensioning System should be covered under the Basic Warranty and/or the Powertrain 60 month/60,000 miles Warranty by Defendants.

216.     By virtue thereof, Plaintiffs seeks a declaratory judgment declaring that the remedial work necessary to correct the defective Timing Chain Tensioning System and its resulting damage alleged herein with respect to the vehicles' Timing Chain Tensioning System are rightfully covered warranty claims.

217.     The remedy sought herein is for class members who still possess their vehicles.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class members, respectfully requests that this Court grant the following relief:

A.     Allow this action to proceed as a class action under Rule 23 for all claims alleged, designate Plaintiffs as the representatives of the classes and their undersigned counsel as counsel for the classes;

B.     Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs and each member of the Classes, in the amount of actual and compensatory damages, and pre-and post-judgment interest as allowed by;

C.     Award all actual, general, special, incidental, statutory, treble, punitive, and consequential damages to which Plaintiffs and members of the Classes are entitled;

D.     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

E.     Award Plaintiffs the attorneys' fees, expert fees and costs incurred in this litigation; and

F.      Grant Plaintiffs such further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated: October 21, 2016                                By their attorneys,

*/s/ Thomas G. Shapiro*
Thomas G. Shapiro (BBO#454680)
Adam M. Stewart (BBO#661090)
**SHAPIRO HABER & URMY LLP**
Seaport East
Two Seaport Lane
Boston MA, 02210
Tel: (617) 439-3939
tshapiro@shulaw.com
astewart@shulaw.com

Gary S. Graifman
Jay I. Brody
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: (845) 356-2570

Howard Longman
Patrick Slyne
**STULL STULL & BRODY, P.C.**
6 East 45th Street
Fifth Floor
New York, New York 10017
Tel: (212) 687-7230