**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SARAH DUNCAN, RICHARD SILVER, ANTHONY WEISSENBURGER, JUDY WEISSENBURGER, KEVIN FRY, SHAUN COONEY, CLINTON STEWART AND MICHELLE LIM STEWART, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>       Plaintiffs,<br><br>    v.<br><br>NISSAN NORTH AMERICA, INC., AND NISSAN MOTOR CO., LTD.,<br><br>       Defendants. | Civil Action No.: 16-12120 |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **March 29, 2018**

### I.       Introduction

The Plaintiffs, eight owners of cars manufactured by the Defendants who seek to represent others similarly situated, bring claims against the Defendants, Nissan North America, Inc. and Nissan Motor Company, based upon an alleged defective component in the cars. Their claims include counts for breach of contract; breach of the implied covenant of good faith and fair dealing; breach of an express warranty; breach of an implied warranty of merchantability; unjust enrichment; violations of the consumer protection statutes of Oregon, Colorado, Texas, Massachusetts, and North Carolina; and a violation of the Magnuson-Moss Warranty Act, 15

1

U.S.C. § 2310(d)(1). For the reasons discussed below, the Court ALLOWS the motion to dismiss with respect to Count I (Oregon Unlawful Trade Practices Act), Count II (Colorado Consumer Protection Act), Count III (Texas Deceptive Trade Practices Consumer Protection Act), Count V (North Carolina Unfair and Deceptive Trade Practices Act) and Count VII (breach of implied warranty of merchantability) and DENIES the motion with respect to the remaining counts.

## II.    Factual Allegations

The Court accepts all non-conclusory facts alleged in the complaint, D. 1, as true, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw[s] all reasonable inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).[1]

The Defendants manufacture and sell or lease cars. Certain models of these cars, identified as the "Class Vehicles," contain a defective Timing Chain Tensioning System ("TCTS"). ¶¶ 1, 2. As alleged, the defect in the TCTS causes the engine of the car to become damaged, necessitating expensive repairs, and potentially also posing a safety risk to the occupants of the car. ¶¶ 4, 59, 62, 101. The Defendants allegedly knew and should have known, at the time of sale or lease of the Class Vehicles, that the TCTS was defective. ¶¶ 5, 61, 71. However, instead of disclosing the defect in the TCTS, the Plaintiffs contend that the Defendants concealed information regarding the defect in the TCTS from consumers, while disclosing information to dealerships via Technical Service Bulletins ("TSBs"), regular publications to dealerships that are authorized to perform repairs on the Defendants' cars. ¶¶ 7-8, 61-62, 84-90. According to a mechanic at an authorized dealership, the defect in the TCTS stems from the fact that a particular component of the TCTS is made of an inferior plastic component, which may be worn away, even the part is supposed to last

---

[1] All paragraph references are to the complaint, D. 1, unless otherwise stated.

the lifetime of the car. ¶ 75. The Defendants subsequently improved the material of this particular component to remedy the defect in subsequent models of its cars. ¶ 76.

The Defendants offer two warranty products on the Class Vehicles: first, the "Basic Warranty," which covered repairs during the first 36,000 miles or 36 months (whichever occurs first), and second, the "Powertrain Warranty," which covered repairs during the first 60,000 miles or 60 months (whichever occurs first). ¶ 6. The warranty covers repairs for defects in "materials and/or workmanship." ¶ 127. The Plaintiffs allege that the Defendants intentionally set these warranty limits so that the warranty coverage would expire before the defect in the TCTS would manifest itself. ¶ 64.

The named Plaintiffs all purchased or leased Class Vehicles manufactured by the Defendants from various dealerships. ¶¶ 14, 19, 24, 29, 34, 40, 45. Plaintiff Sarah Duncan is a citizen of Massachusetts who purchased a 2007 Nissan Maxima in Massachusetts in 2010. ¶14. In 2016, when her vehicle had approximately 127,000 miles, she was informed by a technician at a Nissan dealership that the TCTS needed to be replaced at a cost of approximately $1,500. ¶¶ 17-18. She was also informed that Nissan would not cover the cost of the repair. ¶ 18.

Plaintiff Richard Silver is a citizen of Massachusetts who purchased a 2007 Nissan Maxima in Massachusetts in 2007. ¶ 19. In 2014, when his vehicle had approximately 74,024 miles, he was informed by a technician at a Nissan dealership that the TCTS needed to be replaced, and that Nissan would not cover the cost of the repair. ¶¶ 22-23. He spent $1,641.45 replacing the TCTS. ¶ 23.

Plaintiffs Anthony and Judy Weissenburger are citizens of Oregon who purchased a 2004 Nissan Maxima in Oregon in 2004. ¶ 24. In 2011, when their vehicle had approximately 39,666 miles, they were informed by a technician at a Nissan dealership that the TCTS needed to be

replaced and that Nissan would not cover the cost of the repair. ¶¶ 27-28. They spent approximately $1,400 replacing the TCTS. ¶ 28.

Plaintiff Kevin Fry is a citizen of Colorado who purchased a 2009 Nissan Frontier in Colorado on or about April 18, 2009. ¶ 29. On or about June 15, 2015, when his vehicle had approximately 58,100 miles, he was informed by a technician at a Nissan dealership that the TCTS needed to be replaced and that Nissan would not cover the cost of the repair. ¶¶ 32-33. He spent approximately $1,388.42 replacing the TCTS. ¶ 33.

Plaintiff Shaun Cooney is a citizen of Colorado who purchased a 2007 Nissan Xterra in 2016 in Colorado. ¶ 34. Later in 2016, when his vehicle had approximately 78,000 miles, he was informed by a technician at a Nissan dealership that the TCTS needed to be replaced and that Nissan would not cover the cost of the repair. ¶¶ 38-39. He spent approximately $928.01 replacing the TCTS. ¶ 39.

Plaintiff Clifton Stewart is a citizen of Texas who purchased a 2006 Nissan Frontier in 2006 in Texas. ¶ 40. In 2016, when his vehicle had approximately 87,333 miles, he was informed by a technician at a Nissan dealership that the TCTS needed to be replaced and that Nissan would not cover the cost of the repair. ¶¶ 43-44. He spent approximately $1,625.77 replacing the TCTS. ¶ 44.

Plaintiff Michelle Lim Stewart is a citizen of North Carolina who purchased a 2007 Nissan Pathfinder in North Carolina. ¶ 45. In 2015, when her vehicle had approximately 51,000 miles, she was informed by a technician at a car repair shop that the TCTS needed to be replaced. ¶¶ 48-49. She paid approximately $1,910 replacing the TCTS. ¶ 49.

### III.  Procedural History

On October 21, 2016, the Plaintiffs filed their complaint, D.1.  The Defendants moved to dismiss, D. 14.  This Court heard argument on the motion to dismiss and took the motion under advisement.  D. 38.

### IV.  Discussion

#### A.  Standard of Review

On a motion to dismiss based upon Rule 12(b)(6), the Court will dismiss a complaint that fails to allege adequate facts "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In reviewing the complaint, the Court can consider documents attached to or fairly incorporated into the complaint and facts susceptible to judicial notice.  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

#### B.  Choice of Law

"A federal court sitting in diversity," as this Court does here, "applies state substantive law."  Levin v. Dalva Bros., Inc., 459 F.3d 68, 73 (1st Cir. 2006).  "To determine the applicable substantive law, the federal court applies the choice-of-law principles of the forum state, here, Massachusetts."  Id.  The Defendants assume that "the law of the state where each Plaintiff purchased and sought repair for his or her vehicle controls the substantive law claims of that particular Plaintiff."  D. 15 at 20.  The Plaintiffs do not contest this position.

#### C.  Breach of Express Warranty (Count VI)

In the complaint, the Plaintiffs allege that they entered into either the Basic Warranty or Powertrain Warranty with the Defendants and that the Defendants breached that warranty by failing to cover the cost of repairing the defective TCTSs.  ¶¶ 170, 171.

The Defendants first contend that the complaint fails to state a claim for relief because the warranty only covers "repairs needed to correct defects in the materials or workmanship," D. 15-

1 at 8; D. 15-2 at 10; D. 15-3 at 8; D. 15-4 at 8,[2] whereas the complaint only alleges a design

defect.  In support of this contention, they cite Bruce Martin Constr., Inc., v. CTB, Inc., 735 F.3d

750, 753-54 (8th Cir. 2013).  In that case, the court interpreted an express warranty against "defects

in material and workmanship" to exclude claims based on design defects.  Id.  The court reasoned

that "defects in material and workmanship refer to departures from a product's intended design

while design defects refer to the inadequacy of the design itself . . . where a product is manufactured

correctly but designed inappropriately, the defect is one of design and not 'material or

workmanship.'"  Id. at 753.  The Defendants contend that both the structure of the TCTS and the

material used in the TCTS constitute the "design" and not the "material or workmanship" of the

TCTS, and, therefore, the complaint only alleges defects in the design rather than in the material

or workmanship.  D. 15 at 25-26.

        In response, the Plaintiffs contend that the Defendants mischaracterize the allegations in

the complaint.  D. 20 at 25.  The complaint alleges that the "Defendants failed to adequately ensure

proper materials selection, research, design, testing and/or manufacture of the [TCTS]."  ¶ 82.

Thus, even under the Defendants' interpretation of the phrase "material or workmanship," the

complaint pleads facts sufficient to state a claim for breach of the express warranty because a

failure in the "manufacture" of the TCTS does refer to a departure of the product from its intended

design.

        The Defendants next contend that none of the Plaintiffs' repairs were made during the

period of warranty coverage and thus that the Defendants were not obligated to reimburse Plaintiffs

_____

        [2] Although the warranty agreements were not attached to the complaint, they were attached
to the Defendants' motion to dismiss and the Plaintiffs do not challenge the authenticity of those
warranty agreements.  Accordingly, the Court may properly consider them in adjudicating the
motion to dismiss.  Beddall v. State St. Bank and Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998).

for those repairs under the terms of the warranty.  D. 15 at 21-22.  The Plaintiffs counter by arguing

that the TCTS malfunctioned during the warranty period and thus that the repairs were covered

under the terms of the warranty.  D. 20 at 18-19.  Moreover, the Plaintiffs contend that the warranty

limits are not enforceable because the warranty limits were unconscionable, due to the Defendants'

concealment of the defect from the Plaintiffs.

### i. The Terms of the Warranty

The terms of the warranty do not support the Plaintiffs' position.  The text of the warranty

agreement, for each relevant model year, provides:

> The basic coverage period is 36 months or 36,000 miles, whichever
> comes first.  This warranty covers any repairs needed to correct
> defects in materials or workmanship of all parts and components of
> each new Nissan vehicle supplied by Nissan except for the
> exclusions or items listed . . . .  The Powertrain coverage period is
> 60 months or 60,000 miles, whichever comes first.  This warranty
> covers any repairs needed to correct defects in materials or
> workmanship."

D. 15-1 at 8; D. 15-2 at 10; D. 15-3 at 8; D. 15-4 at 8.  As the Defendants point out, the

warranty agreement is thus an agreement to provide repairs within certain time and mileage

restrictions; not to remedy problems that become manifest within certain time and mileage

restrictions, as the Plaintiffs contend.  As the First Circuit observed, citing law from multiple

jurisdictions, "case law almost uniformly holds that time-limited warranties do not protect buyers

against hidden defects—defects that may exist before, but typically are not discovered until after,

the expiration of the warranty period."  Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988,

993 (1st Cir. 1992).  The Plaintiffs do not make any argument based on the terms of the warranty

to support their contention that the warranty explicitly covers problems made manifest within the

warranty period.  Thus, their contention that the repairs were covered expressly under the terms of the warranty fails.

### ii. Unconscionability of the Warranty Limits

The Plaintiffs contend that, because of the gross disparity in bargaining power between them and the Defendants, the lack of meaningful choice on the part of the Plaintiffs in determining those time limits, and the Defendants' knowledge and active concealment of the defect, the warranty limits are unconscionable.  D. 20 at 19.

Although the substantive laws of five different states are at issue, all five have adopted the same U.C.C. provision regarding unconscionability.  Col. Rev. Stat. Ann. § 4-2-302 (2017); Mass. Gen. L. c. 106, § 2-302 (2017); N.C. Gen. Stat. § 25-2-302 (2017); Or. Rev. Stat. § 72.3020 (2017); Tex. Bus. & Com. Code Ann. § 2.302 (2017).  That provision provides that if a court finds a clause of a contract unconscionable, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Id.  It further provides that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable[,] the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect, to aid the court in making the determination."  Id.

The comment to that provision in the U.C.C. indicates that the "basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract," and that the "principle is one of the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power."  Id. at cmt. 1.

Courts in the five states have interpreted the unconscionability provision of the UCC in similar ways. In North Carolina, "[t]o find unconscionability there must be an absence of meaningful choice on part of one of the parties [procedural unconscionability] together with contract terms which are unreasonably favorable to the other [substantive unconscionability]." Rite Color Chem. Co. v. Velvet Textile Co., Inc., 411 S.E.2d 645, 649 (N.C. Ct. App. 1992) (quoting Martin v. Sheffer, 403 S.E.2d 555, 557 (N.C. Ct. App. 1991) (alterations in original)). Procedurally unconscionability involves "bargaining naughtiness," and is "equated with the words 'unfair surprise' . . . and with the phrase 'lack of meaningful choice.'" Id. at 648 (citation omitted). Substantive unconscionability involves "harsh, oppressive, and one-sided terms of a contract." Id. at 649 (citation omitted). Similarly, under Texas law, "contracts are rendered unconscionable by procedural abuse arising in contract formation, such as the inability of one party to bargain; and by abuse concerning substantive contract terms, such as whether printed terms of a form contract are so one-sided as to be unreasonable." Lindemann v. Eli Lilly & Co., 816 F.2d 199, 203 (5th Cir. 1987). Under Colorado law, "to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party." Davis v. M.L.G. Corp., 712 P.2d 985, 991 (Colo. 1986). In Massachusetts, "unconscionability must be determined on a case by case basis . . . giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." Zapatha v. Dairy Mart, Inc., 408 N.E.2d 1370, 1376 (Mass. 1980). Finally, under Oregon law, "[t]he primary focus [of unconscionability analysis] appears to be . . . substantial disparity in bargaining power,

combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable." Vasquez-Lopez v. Beneficial Or., Inc., 152 P.3d 940, 948 (Or. Ct. App. 2007) (quoting Carey v. Lincoln Loan Co., 125 P.3d 814, 828 (Or. Ct. App. 2005). The parties do not discuss any difference in the unconscionability doctrine between the five states that would be relevant to this analysis and no such difference is apparent.

In support of their claim that the warranty limits are unconscionable under the laws of all five states, the Plaintiffs point to Carlson v. Gen. Motors Corp., 883 F.2d 287 (4th Cir. 1989). In that case, as in this one, plaintiffs brought claims related to a defective component in a car. Id. at 289. The claim at issue was a claim for a breach of the implied warranty of merchantability under South Carolina law, which in turn incorporated Article 2 of the Uniform Commercial Code. Id. at 291-92. Under Article 2, the durational limit on the implied warranty would be unenforceable if it was "unconscionable." Id. at 242. The Fourth Circuit held that a complaint sufficiently stated a claim that the durational limits that the manufacturer sought to impose on the implied warranty of merchantability were unconscionable because the complaint alleged that the purchasers had "no meaningful alternative" to the durational limit on the implied warranty of merchantability and that the manufacturer knew of the inherent defects but failed to warn consumers. Id. at 294. However, the court made clear that its reasoning turned on the fact that the purchasers brought a claim alleging a breach of the implied warranty of merchantability, rather than seeking to void durational limits on an express warranty, because of the different text prescribed by Article 2 for evaluating each of those claims. Id. at 295 (stating that "the crucial distinction is that drawn by the express terms of § 2308 [of the Magnuson-Moss Warranty Act] between the 'reasonableness' of limitations on express warranties and the 'conscionability' of accompanying limitations on implied

warranties" (emphasis in original)).  See Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 622-23 (M.D.N.C. 2006) (relying upon Carlson to conclude that a purchaser had sufficiently stated a claim that the durational limit in an express warranty was unconscionable where the manufacturer was aware of a latent defect at the time of sale and the purchaser lacked a meaningful choice with respect to the terms of the warranty due to the unequal bargaining power with respect to the manufacturer); see also Szymczak v. Nissan N. Am., Inc., No. 10-cv-7493-VB, 2011 U.S. Dist. LEXIS 153011, at *29 (S.D.N.Y. Dec. 16, 2011) (reaching the same conclusion); Lohr v. Nissan N. Am., Inc., No. C16-1023RSM, 2017 U.S. Dist. LEXIS 38934, at *21-22 (W.D.Wa. Mar. 17, 2017) (same); In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 823-24 (S.D. Ohio 2012) (same).

The Defendants point to cases declining to find a durational limit on a warranty to be unconscionable, even where the purchaser alleges that the manufacturer was aware that the defect would manifest after the end of the warranty.  Santos v. SANYO Mfg. Corp., No. 12-cv-11452-RGS, 2013 WL 1868268 at *3-4 (D. Mass. May 3, 2013) (rejecting a claim that the durational limit on a warranty was unconscionable and reasoning that the purchaser had not supported his allegation that he lacked meaningful choice with respect to the warranty, because the purchaser had also alleged that other products sold by different manufacturers outperformed the purchased product);  see Nelson v. Nissan N. Am., 894 F. Supp. 2d 558, 566 (D.N.J. 2012) (reasoning that the manufacturer's "alleged knowledge of a transmission defect is an insufficient basis on which to find the warranty limit unconscionable"); Smith v. Ford Motor Co., 462 F. App'x. 660 (9th Cir. 2011); Berenblat v. Apple, Inc., No. 08-cv-4969-JF, 09-cv-1649-JF, 2010 WL 1460297 (N.D.Cal. Apr. 9, 2010).

Although there is persuasive authority on both sides, the Court is inclined to side with the Plaintiffs. The Plaintiffs have pled a lack of meaningful choice over the terms of the warranty, ¶ 185, a disparity of bargaining power, ¶ 185, a purposeful limitation of the warranty period to exclude the defect, ¶ 64, and a defect known at the time of sale to the manufacturer but concealed from the purchaser, ¶¶ 61-62. Moreover, the defect known at the time of sale to the manufacturer was not necessarily the kind of defect that all manufacturers would necessarily know by testing different components for failure rates. See Santos. 2013 WL 1868268, at *4. Rather, the complaint draws a distinction between components must be routinely replaced in an automobile, and thus are designed to be relatively inexpensive to identify and replace, and components that are expected to last the lifetime of the car, and thus may be quite expensive to replace, and alleges that the defective TCTS was in the latter category. ¶¶ 72, 75. In light of the UCC's instruction to take into account the "general commercial background," and offer parties a "reasonable opportunity to present evidence as to [the clause's] commercial setting, purpose, and effect," UCC § 2-302, the Court finds that the Plaintiffs have sufficiently stated a claim that the durational limits in the express warranty are unconscionable, at least for the purposes of defeating a motion to dismiss.[3]

### D.    Implied Warranty of Merchantability (Count VII)

The complaint also alleges a count of a breach of the implied warranty of merchantability. The Defendants contend that such a claim is barred by the statute of limitations. In Colorado, the statute of limitations is three years. Colo. Rev. Stat. §§ 4-2-725 and 13-80-101 (2017). In Texas,

---

[3] The Defendants also contend that the claim for breach of express warranty under Oregon law is barred by the statute of limitations. D. 15 at 26. The Plaintiffs respond that the statute of limitations was tolled by a nationwide class action lawsuit that was later narrowed to exclude the Oregon plaintiffs. D. 20 at 23-24. The Defendants make no response to this argument in their reply brief, D. 22, so the Court declines to dismiss the Oregon claim on statute of limitations grounds.

Massachusetts, North Carolina and Oregon, the statute of limitations is four years. Tex. Bus. & Com. Code § 2.725 (2017); Mass. Gen. Laws c. 106, § 2-725 (2017); N.C. Gen. Stat. § 25-2-725 (2017); Or. Rev. Stat. § 72.7250 (2017). The Defendants argue that the action accrued at the time of sale, which for all Plaintiffs was more than four years prior to the filing of suit.

The Plaintiffs do not contest either the length of the various statutes of limitations or the time at which the action accrued. They instead contend that the statute of limitations has been tolled by the Defendants' "fraudulent concealment" of the defect from the Plaintiffs, D. 20 at 29-31, namely: the Defendants' continued sale of the Class Vehicles notwithstanding their knowledge of the defect; the Defendants' redesign of the vehicles to fix the defect; the Defendants' giving goodwill adjustments to certain consumers for repairs necessitated by the defect; the Defendants' issuing of TSBs regarding the defect; the Defendants' issuance of a 2009 press release stating that the Class Vehicles feature a "silent timing chain"; and the Defendants' issuing of other statements regarding the positive attributes of the Class Vehicles. D. 20 at 30-31.

The five states offer similar formulations of the fraudulent concealment standard. As the Oregon Supreme Court explained, "one who wrongfully conceals material facts and thereby prevents discovery . . . of the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him." Chaney v. Fields Chevrolet Co., 503 P.2d 1239, 1241 (Or. 1972); see First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp., 744 P.2d 1197, 1200 (Col. 1987); Friedland v. Gales, 509 S.E.2d 793, 807 (N.C. Ct. App. 1998); Crocker v. Townsend Oil Co., Inc., 979 N.E.2d 1077, 1083-84 (Mass. 2012); Shell Oil Co. v. Ross, 356 S.W.3d 924, 927 (Tex. 2011).

The Defendants contend, and the Plaintiffs do not contest, that fraudulent concealment necessarily involves an act of concealment by the defendant (at least in the absence of a duty to

disclose).  See Geo. Knight & Co., Inc., v. Watson Wyatt & Co., 170 F.3d 210, 215 (1st Cir. 1999) (noting that "[a]lthough active fraud ordinarily is required to constitute fraudulent concealment for the purposes of [the] tolling provision . . . Massachusetts courts have recognized that mere failure to reveal information can be fraudulent concealment by a person, such as a fiduciary, who has a duty to disclose"); Holland v. Thompson, 338 S.W.3d 586, 596 (Tex. App. 2010) (identifying "[t]he elements of fraudulent concealment [as] (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception").

The Plaintiffs do not contend that the Defendants were under any duty to disclose, but rather contend that the Defendants engaged in active concealment of the deficiency in the TCTS. However, most of the actions by the Defendants, even as alleged to constitute active concealment, simply refer to the non-disclosure of the TCTS defect.  Continuing to sell the Class Vehicles notwithstanding knowledge of the defect, changing the TCTS design in subsequent models, giving goodwill adjustments to certain consumers for repairs necessitated by the defect, and issuing TSBs regarding the defect all do not involve an action that would make it harder for the Plaintiffs to discover the nature of the defect.

The two remaining actions identified by the Plaintiffs similarly do not rise to the level of active concealment.  The Defendants' "representations and warranties regarding the quality, durability, and other material characteristics of their vehicles," ¶ 83, and the Defendants' 2009 press release by the Defendants describing the Class Vehicles as having a "silent timing chain," ¶ 91, extend beyond a mere nondisclosure.  However, the Plaintiffs do not allege any facts to support the inference that these two statements were either intended to conceal the discovery of

the accrual of the cause of action, or that these statements actually concealed the discovery of the accrual of the cause of action.

The Plaintiffs' reliance upon <u>Falco v. Nissan N. Am., Inc.</u>, 13-cv-00686, 2013 WL 5575065 at *7-8 (C.D. Cal. Oct. 10, 2013) and <u>Ehrlich v. BMW of N. Am., LLC</u>, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) in support of their contention that their allegations suffice to state a claim for active concealment does not aid their position. Both of these cases are grounded in a California law imposing a duty to disclose safety-related risks and thus the non-disclosure of the defect itself may constitute an active concealment. The Plaintiffs make no argument that, under the applicable laws, the Defendants were under a duty to disclose the defect.[4] Thus, the complaint does not plead facts sufficient to state a claim that the Defendants fraudulently concealed the TCTS defect, thereby tolling the statute of limitations on the claims for breach of the implied warranty of merchantability. Accordingly, this claim is time-barred and the Court allows the motion to dismiss Count VII.

### E. Violation of the Magnuson-Moss Warranty Act (Count X)

The complaint pleads one count of a violation of the Magnuson-Moss Warranty Act. That statute provides, in relevant part, that "a consumer who is damaged by the failure of a supplier . . . to comply with any obligation . . . under a written warranty, implied warranty, or service contract, may bring suit for damages." 15 U.S.C. § 2310(d)(1). The word "consumer" is defined in the statute as "a . . . person who is entitled by the terms of [a] warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the

---

[4] The Plaintiffs cite, as supplemental authority, <u>Hays v. Nissan North Am.</u>, 17-cv-00353, 2017 WL 6816748, at *1 (W.D. Miss. Oct. 27, 2017). D. 39-1. But in that case, the district court held that the Defendant made specific representations that amounted to active concealment, <u>id.</u> at *2, and the Court does not find this case otherwise persuasive given the allegations in this case.

obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3). Because the statute explicitly incorporates the consumer's rights under state law in the definition of who may be a consumer, courts have interpreted the Magnuson-Moss Act to incorporate the requirements of a state law cause of action. See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) (stating that "the federal claims hinge on the state law warranty claims"); Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 525 (7th Cir. 2003) (stating that "whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson–Moss Act therefore hinges entirely on the applicable state law"). The parties agree that the Magnuson-Moss Warranty Act count rises or falls with the express and implied warranty claims. Because the complaint pleads facts sufficient to state a claim for breach of express warranty, the Plaintiffs have stated a claim for a violation of the Magnuson-Moss Warranty Act.

## F.    <u>Breach of Contract (Count IX)</u>

In the complaint, the Plaintiffs allege that they entered into "contracts and warranty agreements" with the Defendants, and that the Defendants breached these agreements by providing Plaintiffs with cars that had defective TCTSs. ¶¶ 196, 198. The Defendants, in their motion to dismiss, contend that the Plaintiffs fail to identify any contract that was breached, beyond the express warranty. D. 15 at 42. The Plaintiffs contend that the express warranty itself constitutes a contract that the Defendants breached. D. 20 at 40-41. The Defendants respond that, to the extent that the express warranty is the contract at issue, the count for breach of contract should be dismissed as redundant with the breach of express warranty claim. D. 22 at 26.

At the pleading stage, however, mere redundancy between two separate counts is not a sufficient reason to dismiss a count of the complaint. See In re RCK Modular Home Sys., Inc., 363 B.R. 29, 31 (Bankr. D.N.H. 2007) (stating that the court "d[id] not believe that being

redundant, if it is, is grounds for dismissal under Rule 12(b)(6) for failing to state a claim"). While the Plaintiffs will not be entitled to double recovery on these claims, they need not elect under which theory they will proceed at this stage of the litigation. See Fink v. DeClassis, 745 F. Supp. 509, 515 (N.D. Ill. 1990). Accordingly, the Court declines to dismiss the breach of contract claim.

### G.    Unjust Enrichment (Count VIII)

The complaint pleads a count of unjust enrichment, on the theory that the Defendants' misrepresentations regarding the TCTS defect render it unjust for the Defendants to keep the benefit of not paying for the repairs that the Plaintiffs paid for to the TCTS. ¶¶ 187-194. The Defendants contend that, because the Defendants' responsibility for covering repairs was governed by the warranty agreement, the warranty agreement displaces any common law claim for unjust enrichment. See Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000) (holding that "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory" such as "unjust enrichment"); Zarum v. Brass Mill Materials Corp., 134 N.E.2d 141, 143 (Mass. 1956) (holding that "there is no . . . basis for recovery upon principles of unjust enrichment" where "there is an existing express contract covering the same subject matter"); Sanchez v. Cobblestone Homeowners Ass'n of Clayton, Inc., 791 S.E.2d 238, 241 (N.C. Ct. App. 2016) ("recovery based on unjust enrichment is improper when an actual contract . . . exists"); W. Radio Servs. Co. v. Allen, 147 F. Supp. 3d 1132, 1145 (D. Or. 2015) ("unjust enrichment provides a remedy where no enforceable contract exists"); Stanford v. Ronald H. Mayer Real Estate, Inc., 849 P.2d 921, 923 (Colo. App. 1993) (holding that "unjust enrichment is not a viable theory of recovery" where "there is an express contract"). Although the Plaintiffs make no response to this argument, D. 20 at 39-40, the Court notes that is it not uncommon for an unjust enrichment claim to proceed, in the alternative, with a breach of contract claim beyond the

motion to dismiss stage.  See Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012).
Accordingly, the Court declines to dismiss the unjust enrichment claim at this time.

### H.      Violation of the Oregon Unlawful Trade Practices Act (Count I)

The complaint alleges that the Defendants violated the Oregon Unlawful Trade Practices
Act.  The Defendants contend, in their motion to dismiss, that the claim under the Oregon Unlawful
Trade Practices Act is barred by the statute of limitations, because the statute of limitations for that
claim runs for one year after the discovery of the practice.  D. 15 at 32.  The Plaintiffs' response
to this argument is to refer back to their equitable tolling argument.  D. 20 at 36.  But, for the same
reasons that the equitable tolling argument failed with respect to the count for breach of the implied
warranty of merchantability, that argument fails here as well.

### I.      Violation of the Colorado Consumer Protection Act (Count II)

The complaint alleges that the Defendants violated the Colorado Consumer Protection Act.
The Defendants contend that the complaint fails plead facts sufficient to state a claim for relief
under that Act because the complaint only alleges that the Defendants engaged in a failure to
disclose material information, but does not describe the information that the Defendants failed to
disclose with sufficient particularity.  D. 15 at 33-34 (citing cases).  Since Plaintiffs make no
particular response to this specific argument, D. 20 at 32-33, the Court dismisses this claim for
relief under the Colorado Consumer Protection Act.

### J.      Violation of the Texas Deceptive Trade Practices Consumer Protection Act (Count III)

The complaint alleges that the Defendants violated the Texas Deceptive Trade Practices
Consumer Protection Act.  The Defendants contend that the complaint fails to plead facts sufficient
to state a claim for relief under that Act because that Act requires that the Plaintiffs allege that the
Defendants failed to disclose the information regarding the TCTS defect with the "intent to induce"

18

the Plaintiffs to purchase the Class Vehicles, which it does not do. D. 15 at 34-35; see Tex Bus. & Com. Code § 17.46(b)(24) (2017) (prohibiting "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction").

The Plaintiffs respond that the Defendants' intent to induce the Plaintiffs to purchase the vehicles in failing to disclose the defect in the TCTS can be reasonably inferred from the facts pled in the complaint, specifically the allegation that the Defendants failed to disclose information that it knew concerning the TCTS. D. 20 at 37-38. They further contend that an intent to induce can be inferred from circumstantial evidence. See Siddiqui v. Fancy Bites, LLC, 504 S.W.3d 349, 371 (Tex. App. 2016).

However, such bare allegations here, however, do not support an inference the Defendants did so with the intent to induce the Plaintiffs to purchase the Class Vehicles. D. 22at 14-15. Thus, the complaint fails to plead facts sufficient to state a claim for relief under the Texas Deceptive Trade Practices Consumer Protection Act.

### K. Violation of the Massachusetts Consumer Protection Act, Chapter 93A (Count IV)

The Defendants contend that the complaint fails to plead facts sufficient to state a claim for relief under Chapter 93A, because this statute requires that the Plaintiffs show that the allegedly defective product "fails to conform to a legally binding standard." D. 15 at 36-37 (citing Iannachino v. Ford Motor Co., 888 N.E.2d 879, 882 (Mass. 2008)). In Iannachino, the plaintiffs alleged that the cars they owned that were manufactured by the defendant had a safety defect. Id. at 882. However, the cars conformed to the federal safety standards. Id. at 887. The court held that the plaintiffs had failed to state a claim under Chapter 93A because there was no allegation of property damage and "the complaint must identify a legally required standard that the vehicles

were at least implicitly represented as meeting, but allegedly did not. When the standard that a product allegedly fails to meet is not one legally required by and enforced by the government, a claim of economic injury based on overpayment lacks the premise that the purchase price entitled the plaintiffs to a product that met that standard. Id. at 888. When, as was the case in Iannachino, "the injury alleged is purely economic, and there is a regulatory agency with relevant technical expertise and jurisdiction to provide relief for a problem that may affect many consumers, principles of primary jurisdiction may dictate that the agency "should have an opportunity to consider the claim prior to a judicial hearing." Id. at 888 n. 17. The Plaintiffs contend that Iannachino does not apply to their complaint, because unlike in that case, they allege property damage, in the form of having paid for repairs to correct the defect in the TCTS. D. 20 at 34. The Defendants respond that property damage refers only to damage to property other than the item itself. D. 22 at 23.

The record is not sufficiently developed at this stage to dismiss this count of the complaint. In Iannachino, the court's reasoning is that because the relevant federal agency, the National Highway Traffic Safety Administration ("NHTSA"), sets safety standards and enforces them, Iannachino, 888 N.E. 2d at 884, NHTSA is capable both of adjudicating the plaintiffs' claim that the cars at issue in Iannachino were not sufficiently safe and of providing the appropriate relief to the plaintiffs, and thus that there is no reason for Chapter 93A to cover such claims. However, as the court also pointed out, agencies like NHTSA typically do not compensate individuals for losses resulting from personal injury or property damage that comes from a car's failure to meet safety standards, so there may be good reason for Chapter 93A to cover such claims.

The complaint establishes that NHTSA has a process for reviewing complaints from consumers, investigating the complaints where warranted, and issuing a recall where justified. See

¶ 94.  The complaint does not make clear whether NHTSA would be capable of compensating the Plaintiffs for the expenses they incurred in repairing the TCTS defect.  Thus, based on the pleadings in the complaint alone, the injury alleged by the Plaintiffs is not sufficiently similar to the injury alleged in Iannachino to render the allegations insufficient to state a claim for relief under Chapter 93A.

### L.    Violation of the North Carolina Unfair and Deceptive Trade Practices Act

The complaint alleges that the Defendants violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), codified at N.C. Gen. Stat. § 75–1.1 et seq.  The Defendants contend that the complaint fails to plead facts sufficient to state a claim relief under the UDTPA, because North Carolina prohibits recovery under UDTPA for claims that are based on the defectiveness of a product that only plead damages to that product.  D. 15 at 38.  In Moore v. Coachmen Indus., Inc., 499 S.E.2d 772, 780 (N.C. Ct. App. 1998), the court explained:

> North Carolina has adopted the economic loss rule, which prohibits recovery for economic loss in tort.  Instead, such claims are governed by contract law—in this case, the UCC.  The courts have construed the term "economic losses" to include damages to the product itself.  The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective.  To give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract.  Where a defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract.

Id. (citations omitted).  In that case, the plaintiffs were owners of a recreational vehicle that had spontaneously caught on fire and burned down.  Id. at 774.  The plaintiffs brought suit against the manufacturers of the vehicle, notwithstanding that the duration of the manufacturer's explicit

warranty had expired.  Id. at 775.  The court held that, under the economic loss doctrine, the plaintiffs had failed to state a claim under UDTPA to recover for the loss of the vehicle.  Id. at 780.

Other courts have applied North Carolina's economic loss doctrine to prevent recovery under UDTPA for claims arising out of the defect of a certain product alleging damage only to the product itself.  See Bussian, 411 F. Supp. 2d at 627 (finding that the economic loss doctrine applies in cases "involving allegations of a defective product where the only damage alleged is damage to the product itself and the allegations of unfair trade practices are intertwined with the breach of contract or warranty claims"); Ellis v. La.-Pac. Corp., 699 F.3d 778, 786 (4th Cir. 2012) (applying the economic loss doctrine from Moore to downstream purchasers of a product).

The Plaintiffs respond that the economic loss doctrine does not bar their claims because, in their complaint, they plead that the Defendants made specific misrepresentations regarding the TCTS system.  D. 20 at 35 n. 16.  But the cases they cite do not support their contention that the economic loss doctrine articulated in Moore does not apply to situations involving misrepresentations by the manufacturer.  In Pearce v. Am. Def. Life Ins. Co., 343 S.E.2d 174, 179-80 (N.C. 1986), the court applied a regulation prohibiting a specific type of misrepresentation – but no such regulation is present here.  In Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146 (4th Cir. 2012) and Oxley v. Asplundh Tree Expert Co., No. 06-cv-60, 2006 U.S. Dist. LEXIS 42092 (W.D.N.C. May 16, 2006), there was no sale of a product or warranty relationship between the plaintiffs and defendants.  Both Martin v. Bimbo Foods Bakeries Distrib., LLC, No. 15-cv-96-BR, 2015 WL 1884994 at *7-*8 (E.D.N.C. Apr. 24, 2015) and Canady v. Mann, 419 S.E.2d 597, 603 (N.C. Ct. App. 1992) involve a contractual relationship, but neither involves the sale of product that did not perform as warranted.  That is an important distinction, because the sale of a product with some type of warranty agreement indicates that the parties have allocated the risk of defects

in the product. <u>Moore</u> makes clear that where the parties have done so, the UDTPA does not provide an additional remedy that would upset the balance struck by the parties. <u>See</u> <u>Medeiros v.</u> <u>Lenovo (U.S.) Inc.</u>, No. 15-cv-10261-LTS, 2016 WL 500503, at *7-8 (D. Mass. Jan. 27, 2016) (finding that a misrepresentation in the context of a defective product claim did not suffice to state a claim under North Carolina's UDTPA). Thus, the complaint fails to plead facts sufficient to state a claim for relief under the UDTPA.

### M.  Declaratory Relief

The complaint pleads for a declaratory judgment "declaring that the remedial work necessary to correct the defect [TCTS] and its resulting damage alleged herein with respect to the vehicles' [TCTS] are rightfully covered warranty claims." ¶ 216. The Defendants contend that the Plaintiffs have not asserted a legally cognizable injury sufficient to give them standing to bring the declaratory judgment claim, because the express warranty did not cover the defect in the TCTS. D. 15 at 44-45. <u>See</u> <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992) (explaining that standing requires that the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally protected interest"). Because the Plaintiffs have stated a claim for breach of the express warranty, however, the Defendants' argument that the Plaintiffs have no standing to seek the declaratory relief they identify in their complaint fails.

## V.  Conclusion

For the foregoing reasons, the Defendants' motion to dismiss, D. 14, is ALLOWED with respect to Count I (Oregon Unlawful Trade Practices Act), Count II (Colorado Consumer Protection Act), Count III (Texas Deceptive Trade Practices Consumer Protection Act), Count V (North Carolina Unfair and Deceptive Trade Practices Act), Count VII (Breach of Implied Warranty of Merchantability), and DENIED with respect to the remaining counts.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge